574 So.2d 97 (1991)
Tommy Sands GROOVER, Appellant,
v.
STATE of Florida, Appellee.
No. 73756.
Supreme Court of Florida.
January 3, 1991.
Rehearing Denied February 25, 1991.
*98 Larry Helm Spalding, Capital Collateral Representative, Billy H. Nolas, Chief Asst. CCR and Thomas H. Dunn, Staff Atty., Office of the Capital Collateral Representative, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
EHRLICH, Justice.
In Groover v. State, 489 So.2d 15 (Fla. 1986), this Court considered Tommy Sands Groover's appeal of the trial court's denial of his Florida Rule of Criminal Procedure 3.850 motion to vacate judgment and sentence and of his application for a stay of execution. The motion was denied by the trial court without an evidentiary hearing. Upon review, this Court could not say that it had been conclusively shown that Groover was entitled to no relief in connection with his contention, contained in claims I and III, that trial counsel was ineffective for failing to inquire into his competency to stand trial and for failing to request a psychiatric evaluation. Our conclusion that an evidentiary hearing was required was based primarily on the fact that large doses of Mellaril, a powerful antipsychotic drug, were administered to Groover throughout his pretrial and trial incarceration. 489 So.2d at 17. In his order, the trial judge recognized that these claims are "entwined" and "both involve the same factors of competency enumerated in [Florida] Rule [of Criminal Procedure] 3.211."
After a two-day evidentiary hearing, the trial court found that "[t]here has been no sufficient evidence of mental incompetency or any deficient performance of counsel, and there has been no requisite showing of any prejudice of the defendant, [under the standards set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)]." In rejecting the testimony of the defense's expert witnesses, the court concluded that:
None of the expert witnesses presented by the defense, except Shore, participated in the 1983 trial or observed the defendant at the time of pretrial or trial. The defense experts read none or only selected parts of the voluminous transcripts of the pretrial and trial proceedings that are crucially relevant to this cause. They jump to conclusions regarding a distant trial and conclude that Nichols and Shore were ineffective counsel without any significant and believable observations at the time of pretrial and trial. In essence, the views of the defense's seven experts are from a perspective far removed from the realities of the 1983 trial and without benefit of Nichols' and Shore's meticulous preparation and extensive knowledge of all the facts of the case, and without the benefit of hundreds of pages of testimony generated from the defendant himself.
The court concluded that attorneys Nichols and Shore,[1]
each made conscious tactical choices when dealing with the defendant and during the formulation of his defense. Both attorneys testified that in their *99 opinions there was no genuine issue of sanity. In sharp contrast to defense experts, both Nichols and Shore felt compelled to follow the dictates of Rule 3.210, Fla.R.Crim.P., which requires that a motion for competency examination be made in good faith and on reasonable grounds to believe the defendant is incompetent to stand trial, which requires a recital of the specific observations of and conversations with the defendant which have formed the basis of such motion, and which in the committee note indicates that such a motion should not be "boiler plate." There was clearly no indication to either Nichols or Shore that the defendant was insane or suffering from diminished capacity due to the administration of Mellaril.
We agree with the trial judge that attorneys Shore and Nichols were not deficient for failing to seek an examination to determine Groover's competency to stand trial. Where there is no evidence calling a defendant's competency into question counsel is not bound to seek an evaluation under Florida Rule of Criminal Procedure 3.210. See Blanco v. Wainwright, 507 So.2d 1377 (Fla. 1987). The trial court found that Groover "exhibited no behavior whatsoever in the pretrial or trial phases of this case that would indicate that he was mentally deficient or under the influence of any drug to the extent his normal faculties were imparied [sic]." The state's witnesses support this conclusion. As noted by the trial judge,
[t]here is abundant and overwhelming evidence from many witnesses who observed and conversed with Defendant throughout the pretrial and trial stages:
1. that the defendant did not appear retarded or unable to communicate;
2. that the defendant could relate concepts of time;
3. that the defendant never exhibited inappropriate courtroom behavior, and, in fact, was oriented to the events in the courtroom.
This abundant and overwhelming evidence is in addition to the hundreds of pages of transcripts in the record showing a lucid, oriented, and conniving person.
Our conclusion that an evidentiary hearing was warranted was based to a large part on the "explicit record evidence that prison officials administered large doses of Mellaril ... to [Groover] throughout his pretrial and trial incarceration." 489 So.2d at 17. Testimony of Dr. Antoine Innocent, the psychiatrist who first examined Groover while in the Duval County Jail and prescribed the Mellaril, and testimony of others who observed Groover during the time he was administered the drug supports the trial court's finding that "[t]here was clearly no indication to either Nichols or Shore that the defendant was insane or suffering from diminished capacity due to the administration of Mellaril." Dr. Innocent gave the following account regarding the Mellaril:
I determined the patient was agitated and complaining of [being] unable to sleep and he was also depressed at the time. He was agitated depression [sic]. The reason I ordered Mellaril for him is because I know the patient is a drug addict. Drug addict [sic] can tolerate a lot of medication, so I start with a moderate dosage for him.
When asked if in his opinion the medication affected Groover's ability to appreciate the charges against him, Dr. Innocent replied:
Not at all, because as a matter of fact this patient had been  I recall this patient had been requesting more medication.
... .
I don't think the dosage as prescribed was a high dosage for a drug addict so that could not affect his ability or whatever, his functioning.
Dr. Steven T. Murray, a general medical practitioner who, at Groover's request, put Groover back on Mellaril after the medication had been discontinued, was asked "did you ever notice any negative side effects to the Mellaril that was being prescribed for Tommy Groover while he was in the Duval County Jail?" Dr. Murray responded: "Not the ones what we usually see, not usually, I should say the ones that *100 are unexpected and unpleasant." Upon further questioning, Dr. Murray added: "The side effects  the side effects by Mr. Groover on Mellaril were that he was less agitated, more calm, and he even said he felt a higher dose would make him feel more effective."
Dr. Ernest Carl Miller, a psychiatrist specially trained in the area of psychotropic drugs, testified as follows.
State: In your expert opinion, would the doses of the drug Mellaril that the defendant was taking at the time that he was incarcerated in either jail have necessarily caused the defendant to become incompetent?
Miller: No, not necessarily.
State: All right. Would you have even expected those dosages to cause the defendant to become incompetent?
Miller: No, I would not.
State: Why not?
Miller: Mellaril is not a drug which is known for generating such disturbances of the mind that would cause one to be characterized as incompetent in a trial proceeding.
... .
State: Did anything in the jail records or the transcript of the defendant's testimony that you reviewed lead you to believe in any way that the defendant was intoxicated or incompetent from the use of Mellaril or any other drug?
Miller: No.
While there was testimony presented that counsel's failure to inquire into Groover's competency to stand trial or to request a competency evaluation amounted to deficient performance, there was clearly competent substantial evidence to support the trial court's finding that counsel's performance was not deficient. Because we remanded for a hearing on the limited issue of counsel's ineffectiveness in connection with Groover's alleged incompetency, we do not address the collateral issues raised. We also find no merit to Groover's claim that he was denied an impartial determination of his claims. Accordingly, the trial court's order denying relief is affirmed.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Nichols was appointed by the court to represent Groover in February 1982, and represented him until the time it became apparent that Groover was not going to honor the plea agreement. Shore took over Groover's defense in August 1982, and represented him throughout the trial.