PER CURIAM.
Micah Louis Nelson appeals an order of the circuit court denying his motion to vacate his conviction of first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, *24 § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the postconviction court’s order and deny the petition for a writ of habeas corpus.
FACTS AND PROCEDURAL HISTORY
Appellant, Micah Louis Nelson, was convicted of and sentenced to death for the first-degree murder of Virginia Brace.[1] The facts were set forth in Nelson v. State, 850 So.2d 514 (Fla.2003), and are provided in relevant part below:
The evidence presented at trial indicated that during the early morning hours of November 17, 1997, Micah Louis Nelson (Nelson) entered Virginia Brace’s (Brace) home by removing the screen and climbing through the bathroom window. Seventy-eight-year-old Brace had been in bed and her glasses and hearing aid were on her bedroom dresser. Nelson sexually assaulted Brace, took her car keys from her purse, and then placed her in the trunk of her own car. He drove around with Brace in the trunk for a period of hours and eventually drove to an orange grove, where he apparently intended to leave her. However, the car became stuck in soft sand and had to be pulled out with the assistance of machinery at about 9:30 a.m. on November 17,1997.
Steven Weir, the heavy equipment operator who pulled the car out of the sand, felt a thud when he put his hand on the car’s trunk. Nelson advised him that there was a dog in the trunk and then proceeded to turn up the car radio. The heavy equipment operator observed Nelson to be nervous and pacing, and Nelson would not look him in the eye when they spoke. Nelson sped off as soon as the car was lifted out of the sand and drove to another orange grove where he let Brace out of the trunk and walked her or dragged her 175 feet into the grove. With Brace on the ground, Nelson attempted to strangle her with his bare hands, emptied the contents of a fire extinguisher into her mouth, and forced a tire iron into her mouth and through the back of her head.
At 3:30 p.m. on November 17, 1997, Joann Lambert noticed an unfamiliar car parked on the road behind her house. The car was still parked in the same location when it began to get dark that evening so she called the Highlands County Sheriffs Department. When Deputy Vance Pope arrived to investigate the car, he found Nelson asleep in the back seat. Deputy Pope also noticed an insurance card on the floorboard with the name Virginia Brace. Nelson told Pope that he borrowed the car from a family friend. Pope could not verify the vehicle’s registration because the DMV computer was not working at that time. Pope would not allow Nelson to drive because he did not have a driver’s license, so he gave Nelson a ride to Nelson’s sister’s house. Later that evening, Pope heard the name Virginia Brace over the police radio, which prompted him to contact Sergeant Hofs-tra regarding his earlier contact with Nelson. Police recovered the car where Deputy Pope had last seen it, and it was identified as belonging to Brace.
At 11 p.m. on November 17, 1997, Deputy Pope returned to the house where he previously dropped off Nelson. Nelson agreed to be questioned by the Avon Park Police. After a series of interrogations on November 18, 1997, and November 19, 1997, Nelson showed *25 the police where Brace’s body was located and he confessed to killing her.
Nelson told police that some time after midnight, he broke into Brace’s home through her bathroom window. He stated that he entered her bedroom and she woke up and started screaming. He said that they had a struggle on her bed, after which he took her car keys and placed her in the trunk of her car. Nelson stated that he drove around in the car for hours and that at one point he stopped to get gas. He then drove to an orange grove where he was going to kill Brace, but the car became stuck in the sand and he required help to extricate the car from the sand. He then took Brace to another orange grove where he and Brace walked into the grove. He stated that he started to choke Brace on the ground, but she did not pass out, so he sprayed a fire extinguisher into her mouth, which made her cough. He stated that he then took the tire iron and stuck it into her mouth until it came through the back of her neck and into the ground. He stated that Brace gasped for air when he pushed the tire iron into her mouth. Nelson denied having any sexual contact with Brace.
At trial, Dr. Melamud, the medical examiner, testified that the condition of Brace’s body corresponded with her being dead for two days before she was found. He testified that Brace’s injuries were consistent with asphyxiation, an object being forced into her mouth through the back of her neck, such as a tire iron, and a fire extinguisher being discharged into her mouth. He stated that she also suffered a crushed vertebra as a result of the compression of her neck and spinal cord, and three broken ribs. He testified that her death could have resulted from any one of those injuries, or a combination of them. Although he could not assign an order in which the injuries occurred, he stated that the medical evidence indicated that she was alive both when the object was forced into her mouth and through the back of her neck, and when the fire extinguisher’s contents were expelled into her mouth. He could not say with certainty if she was conscious when those injuries were inflicted, but he opined that if Brace had been conscious during the infliction of any of these injuries, she would have experienced severe pain.
[[Image here]]
The jury recommended a death sentence by a vote of nine to three and the trial court sentenced Nelson to death. The trial court found six statutory ag-gravators: (1) the defendant was previously convicted of a felony, was under a sentence of imprisonment, and was on felony probation, or controlled release, at the time of the murder; (2) the crime for which the defendant was to be sentenced was committed while the defendant was engaged in the commission of, or flight after, committing a sexual battery, burglary, or kidnapping; (3) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest; (4) the murder was especially heinous, atrocious or cruel (HAC); (5) the murder was committed in a cold and calculated and premeditated manner, and without any pretense of moral or legal justification (CCP); and (6) the victim was particularly vulnerable due to advanced age or disability. The trial court found that all six aggravators were proven beyond a reasonable doubt and assigned five of them great weight. The trial court assigned little weight to the sixth aggravator of the victim being “particularly vulnerable due to age or disability.”
*26 The trial court addressed and rejected three statutory mitigating factors.⅛3] Twenty-one nonstatutory mitigating circumstances were addressed by the trial court: (1) at the time of the offense the defendant was impulsive and his ability to exercise good judgment was impaired (not proven); (2) defendant was remorseful for his conduct (not proven); (3) defendant did not plan to commit the offense in advance (not proven); (4) defendant demonstrated appropriate courtroom conduct and behavior (very little weight); (5) defendant is capable of forming loving relationships with family members and friends (very little weight); (6) any mental illness of the defendant may have been controlled by medication (little weight); (7) it is unlikely the defendant will be a danger to others while serving a life sentence in prison (very little weight); (8) defendant did not resist arrest, cooperated with the police, and showed the authorities where the body was located (moderate weight); (9) defendant never knew his father and lost his mother at a young age (moderate weight); (10) defendant had a troubled and neglected childhood (not proven); (11) defendant was the victim of inappropriate sexual conduct and abuse as a child (little weight); (12) defendant has organic brain damage (not proven); (13) defendant suffered from depression as a result of his conduct and attempted suicide in the jail (little weight); (14) defendant had diminished educational experience (little weight); (15) defendant was sexually assaulted while in prison (some weight); (16) defendant has limited intelligence (some weight); (17) defendant has no prior violent felony convictions (little weight); (18) the circumstances which resulted in the homicide are unlikely to recur since the defendant will be spending the rest of his life in prison (some weight); (19) defendant has accepted responsibility for his action (not proven); (20) defendant has never received treatment for his mental or emotional problems (little weight); and (21) defendant was willing to plead guilty to all charges for consecutive life sentences without parole (very little weight).
[N.3] The three statutory mitigating factors addressed by the trial court were: (1) age of the defendant at the time of the offense (twenty-one years old) (not proven); (2) the defendant was under extreme mental or emotional disturbance at the time of the offense (not proven); and (3) his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired (not proven).
Id. at 518-21 (some footnotes omitted).
On direct appeal, Nelson’s sole challenge to his conviction of first-degree murder focused on the trial court’s denial of his motion to suppress certain statements and admissions. Id. at 521. Nelson claimed that he made incriminating statements as a result of police coercion, which included an allegedly false indication by police that DNA evidence linked Nelson to the crime, the use of the “Christian burial” technique, and the fact that police did not afford Nelson breaks during the interrogation despite fatigue. Id. We rejected these arguments and affirmed the denial of the motion to suppress, finding that the trial court’s factual findings and legal conclusions were sufficiently supported. Id. at 521-24. We affirmed the conviction, citing to the “plethora of physical evidence linking Nelson to [the crime].” Id. at 521.
Nelson raised several issues pertaining to his sentence, including that (1) the trial court erred by finding the avoid arrest and cold, calculated, and premeditated (CCP) aggravators; (2) the trial court failed to *27 consider and properly weigh certain mitigating factors; (3) his death sentence was disproportionate; and (4) the Florida death penalty scheme was unconstitutional. Id. at 524-33. We rejected each argument pertaining to aggravators and mitigating factors, finding competent substantial evidence to support the trial court’s findings on each claim. Id. at 528-32. We also rejected Nelson’s proportionality claim based on the totality of the circumstances and rejected Nelson’s constitutional argument. Id. at 532-33. We ultimately affirmed Nelson’s conviction and sentence. Id. at 533.
Nelson filed a rule 3.851 motion for post-conviction relief on September 16, 2004, and raised twelve claims.[2] The postconviction court granted an evidentiary hearing, during which attorney Robert John Trogo-lo, Dr. Mark Ashby, Dr. Henry L. Dee, attorney Julia Williamson, and Dr. Michael Scott Maher testified. The postconviction court ultimately denied Nelson’s motion for postconviction relief, concluding that all of the claims were either lacking evidentia-ry support, without merit, or procedurally barred. Nelson appeals the denial of his postconviction motion to this Court and has filed a petition for writ of habeas corpus. For the reasons expressed below, we affirm the postconviction court’s order and deny Nelson’s petition for writ of ha-beas corpus.
RULE 3.851 APPEAL
Ineffective Assistance of Trial Counsel
Nelson asserts the following four claims in his motion for postconviction relief regarding ineffective assistance of counsel: (1) trial counsel was ineffective by failing to move for a determination of competency; (2) trial counsel was ineffective by faffing to call a witness in both the guilt and penalty phases of the trial to establish that Nelson lacked mens rea and to establish statutory mental mitigation in the penalty phase; (3) trial counsel was ineffective in the investigation and preparation of the penalty phase for failing to call a witness to establish statutory mitigation in the penalty phase; and (4) trial counsel was ineffective for failing to request that the court instruct the jury on statutory mitigation in the sentencing phase of Nelson’s trial. As explained below, we affirm the trial court’s denial of relief on all ineffective assistance of counsel claims raised by Nelson.
Following the United States Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 *28 L.Ed.2d 674 (1984), we have held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceedings that confidence in the outcome is undermined. A court considering a claim of ineffectiveness of counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citations omitted).
To prove the first prong under Strickland, Nelson must prove that counsel’s performance was unreasonable under the “prevailing professional norms.” Morris v. State, 931 So.2d 821, 828 (Fla.2006) (quoting Strickland, 466 U.S. at 688, 104 S.Ct. 2052). In other words, Nelson must establish that “counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Strickland, 466 U.S. at 687, 104 S.Ct. 2052; see also Cherry v. State, 659 So.2d 1069, 1072 (Fla.1995). To establish the second prong under Strickland, the defendant must prove that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052. “Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.” Id. at 687, 104 S.Ct. 2052.
Additionally, there is a strong presumption that trial counsel’s performance was not ineffective. See id. at 689, 104 S.Ct. 2052. “A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Id. Therefore, the defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’” Id. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). In Occhicone v. State, 768 So.2d 1037 (Fla.2000), this Court held that “strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” Id. at 1048 (citing Rutherford v. State, 727 So.2d 216, 223 (Fla.1998)).
Generally, this Court’s standard of review following a denial of a postcon-viction claim where the trial court has conducted an evidentiary hearing affords deference to the trial court’s factual findings. McLin v. State, 827 So.2d 948, 954 n. 4 (Fla.2002). “As long as the trial court’s findings are supported by competent substantial evidence, ‘this Court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court.’ ” Blanco v. State, 702 So.2d 1250, 1252 (Fla.1997) (quoting Demps v. State, 462 So.2d 1074, 1075 (Fla.1984)). However, the circuit court’s legal conclusions are reviewed de novo. See *29 Sochor v. State, 883 So.2d 766, 772 (Fla.2004).
Failure to Move for a Competency Determination
Nelson’s first ineffective assistance claim asserts that trial counsel failed to move for a competency determination. Nelson contends that his suicide attempt and the opinion of the defense mental health expert that he was marginally competent placed trial counsel on notice that Nelson’s competency to proceed was at issue. However, because Nelson is unable to demonstrate that trial counsel was deficient, the postconviction court properly denied this claim.
In Futch v. Dugger, 874 F.2d 1483 (11th Cir.1989), the United States Court of Appeals for the Eleventh Circuit considered an ineffective assistance claim regarding trial counsel’s failure to determine the petitioner’s competency to stand trial. Id. at 1486. The court stated, “In order to demonstrate prejudice from counsel’s failure to investigate his competency, a petitioner has to show that there exists ‘at least a reasonable probability that a psychological evaluation would have revealed that he was incompetent to stand trial.’ ” Id. at 1487 (quoting Alexander v. Dugger, 841 F.2d 371, 375 (11th Cir.1988)). Here, the record demonstrates that Nelson’s trial counsel were experienced in handling capital cases and deemed Nelson competent to proceed based on Dr. Dee’s evaluation and through their own contacts with Nelson. Trial counsel indicated during the eviden-tiary hearing that, based on face-to-face dealings with Nelson, it was never deemed necessary to move for a competency determination. Trial counsel also indicated that they would have filed a motion for a competency determination if Dr. Dee had clearly indicated that Nelson was incompetent. In addition, once the court ordered a competency determination, Nelson was found to be competent and capable of assisting his attorneys. Nelson’s reliance on Dr. Dee’s testimony that Nelson was “marginally competent” appears to be misplaced because neither the allegation nor the record demonstrates that Dr. Dee ever deemed Nelson incompetent to proceed. Further, nothing in the record indicates that Nelson was incompetent at the time of trial or at the time of the murder.
Also, Nelson alleges that his suicide attempt alone was sufficient to raise a question about his competency to stand trial. However, no such presumption exists. In Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), the United States Supreme Court suggested that while a suicide attempt is an indication of possible mental instability, it alone does not necessarily create a reasonable doubt about a defendant’s competency to stand trial. Id. at 180, 95 S.Ct. 896. Trial counsel testified that Nelson met with the defense team regularly and understood the factual and procedural elements of the case and the charges against him and the roles of the judges and the lawyers. Also, trial counsel indicated that Nelson’s suicide attempt was heavily considered when determining whether to raise the issue of competency, but it was their opinion that it did not necessarily render him incompetent.
Furthermore, the administration of Mellaril, a powerful antipsychotic drug, did not necessarily render Nelson incompetent: In Groover v. State, 574 So.2d 97 (Fla.1991), we reviewed a similar issue where the petitioner raised an ineffectiveness of counsel claim for counsel’s failure to request a psychiatric evaluation after it became clear prison officials had administered large doses of Mellaril. Id. at 98. The postconviction court determined that there had been no sufficient evidence of *30 incompetency, deficient performance of counsel, or prejudice where trial counsel testified there was no genuine issue of sanity or indication the defendant was suffering from diminished capacity. Id. at 98-99. We agreed, stating, “Where there is no evidence calling a defendant’s competency into question, counsel is not bound to seek an evaluation....” Id. at 99 (citing Blanco v. Wainwright, 507 So.2d 1377 (Fla.1987)). Thus, while the administration of Mellaril warrants an evidentiary hearing when a postconviction claim of ineffective assistance of counsel is raised for failure to seek a competency determination, Mellaril is not per se evidence of incompetency. Accordingly, trial counsel cannot be said to have performed below an objective standard of reasonableness or that trial counsel’s performance was unreasonable under prevailing professional norms.
Because Nelson has not demonstrated deficiency of his trial counsel, we need not address prejudice. See, e.g., Waterhouse v. State, 792 So.2d 1176, 1182 (Fla.2001); Maxwell, 490 So.2d at 932 (“A court considering a claim of ineffectiveness of trial counsel need not make a specific ruling on the performance component of the test when it is clear that the prejudice component is not satisfied.”).
Failure to Call Dr. Ashby
Nelson’s second ineffective assistance claim alleges that trial counsel failed to call Dr. Ashby in the guilt phase to establish that Nelson lacked mens rea and also in the penalty phase to establish statutory mental mitigation. Nelson asserts that Dr. Ashby’s testimony was critical to establish his state of mind because Ashby diagnosed him with schizoaffective disorder shortly after the crime. However, for the reasons stated below, Nelson has failed to demonstrate trial counsel’s deficiency and we affirm the postconviction court’s denial of this claim.
Regarding trial counsel’s failure to call Dr. Ashby during the guilt phase of trial, Nelson relies on Bunney v. State, 603 So.2d 1270 (Fla.1992), where we considered whether it was error for the trial court to refuse to allow testimony concerning the defendant’s alleged epileptic condition absent a plea of insanity. Id. at 1271. We reasoned that “while evidence of diminished capacity is too potentially misleading to be permitted routinely in the guilt phase of criminal trials, evidence of ‘intoxication, medication, epilepsy, infancy, or senility1 is not,” and held that “evidence of certain commonly understood conditions that are beyond one’s control ... should also be admissible.” Id. at 1273. Nelson argues that his psychosis is a condition beyond his control, which was thus admissible. However, Nelson’s reliance on Bun-ney is misplaced. Our precedent has firmly established the inadmissibility of evidence relating to mental capacity absent an insanity plea. See, e.g., Everett v. State, 97 So.2d 241, 245-46 (Fla.1957) (trial court did not err in refusing to give an instruction that the defendant’s mental condition could be considered by the jury in deciding whether he was capable of forming a premeditated design even though he was not found insane); Ezzell v. State, 88 So.2d 280, 282 (Fla.1956) (“Since the plea of insanity was out and there was no defense based on mental defects less than insanity, there was no reason for ... testimony or to labor the question.”). In Chestnut v. State, 538 So.2d 820 (Fla.1989), we squarely addressed the admissibility of mental defects where the defendant does not raise an insanity defense. Id. at 820. Ultimately, we explained:
If [alleged] mental deficiencies are sufficient to meet the definition of insanity, these persons should be acquitted on *31 that ground and treated for their disease. Persons with less serious mental deficiencies should be held accountable for their crimes just as everyone else. If mitigation is appropriate, it may be accomplished through sentencing, but to adopt a rule which creates an opportunity for such persons to obtain immediate freedom to prey on the public once again is unwise.
Id. at 825. Therefore, because Nelson did not raise an insanity defense, counsel cannot be found deficient for failing to call Dr. Ashby in the guilt phase.
Nelson has likewise failed to demonstrate counsel’s deficiency at the penalty phase. The postconviction court denied this claim, noting that Dr. Dee testified extensively in the penalty phase with regard to Nelson’s mental state and applicable mitigating factors. The record demonstrates that Nelson received the benefit of penalty phase testimony from Dr. Dee, whose testimony was more extensive than what could have been offered by Dr. Ash-by. Trial counsel retained Dr. Dee, a trained forensic neuropsychologist, to testify during the penalty phase. Though Dr. Ashby did not examine Nelson for the purpose of presenting mitigating evidence, Dr. Dee did. Further, the record demonstrates that Dr. Dee had access to Dr. Ashby’s records relating to Nelson. As demonstrated at the evidentiary hearing, Dr. Ashby’s testimony would have been cumulative to, and much less detailed than, Dr. Dee’s testimony. Trial counsel testified that he did not give much thought to calling Dr. Ashby, who as a jail psychiatrist worked on a contract basis with the jail and had not examined Nelson for the purpose of testifying to mitigating evidence.
It is notable that Nelson does not cite a single case to demonstrate support for his claim that he is entitled to relief under Chambers v. Armontrout, 907 F.2d 825 (8th Cir.1990). In Chambers, trial counsel “(1) failed to interview, (2) failed to call at trial, and (3) failed to call at sentencing the only witness who would have testified that Chambers acted in self-defense.” Id. at 826. Thus, the case is distinguishable because “[t]he decision to interview a potential witness is not a decision related to trial strategy.... It is a decision related to adequate preparation for trial.” Id. at 828. Here, there is no allegation that Nelson’s trial counsel failed to adequately prepare. Accordingly, Nelson has not demonstrated that counsel was deficient for failing to call Dr. Ashby during the penalty phase.
Failure to Call a Witness to Evaluate Dr. Kremper’s Reports
Nelson’s third ineffective assistance claim alleges that trial counsel was deficient for failing to secure a qualified psychiatrist to evaluate the report of Dr. Kremper and testify regarding Nelson’s mental health history. Nelson asserts that such testimony would have established that his mental illness was evident at an early age. Trial counsel made the decision not to present Dr. Kremper’s testimony to prevent the jury from hearing Nelson’s prior bad conduct regarding sexual battery and lewd assault on a family member. We agree with the postconviction court that this decision was reasonable and deny this claim.
We confronted this issue in Sexton v. State, 997 So.2d 1073 (Fla.2008), where we considered whether trial counsel was deficient for choosing not to present testimony from Dr. Maher that the defendant had a history of bizarre sexual and criminal behavior. Id. at 1082-84. Trial counsel’s theory was to demonstrate brain damage as documented by a PET scan instead of behavior that “would be so inflammatory to the jury that it would counteract any *32 possible mitigation.” Id. at 1084. Trial counsel reasoned that “Dr. Maher’s description of Sexton as a sadistic sexual psychopath, if heard by the jury, would be ‘tantamount to stipulating to death.’ ” Id. We affirmed the postconviction court’s order denying relief on this claim, finding that penalty phase counsel had made an informed strategic decision and that Sexton failed to demonstrate that counsel was deficient. Id. at 1085.
Also, in Willacy v. State, 967 So.2d 131 (Fla.2007), we confronted a similar issue where we considered whether it was ineffective assistance for counsel to avoid presenting evidence that the defendant was a sociopath. Id. at 143. We found that the postconviction court’s finding was supported by competent, substantial evidence and that counsel made a reasonable strategic choice, after investigation, to forego presentation of negative mitigating evidence. Id. at 144. We. held that Willacy “[had] not shown prejudice because presenting [the] mitigating evidence ‘would likely have been more harmful than helpful.’” Id. (quoting Evans v. State, 946 So.2d 1, 13 (Fla.2006)).
As illustrated, it is reasonable for trial counsel to forego evidence that, if presented in mitigation, could damage a defendant’s chances with the jury. Further, as we stated in Stephens v. State, 975 So.2d 405 (Fla.2007), “[B]eing able to secure an expert witness to provide an opinion as to mental health mitigation during postcon-viction proceedings, which arguably could have been helpful ... does not, in and of itself, render trial counsel’s performance ineffective.” Id. at 415. Thus, trial counsel’s decision not to present testimony that would have opened the door to Nelson’s incestuous rape of his minor cousin cannot be deemed deficient. Because Nelson cannot demonstrate deficiency, we need not address whether he was prejudiced.
Trial Counsel’s Failure to Request the Court to Instruct the Jury on Statutory Mitigation in the Sentencing Phase
In Nelson, we affirmed the trial court’s rejection of the two statutory mental health mitigating circumstances, stating, “The record reflects that there was competent, substantial evidence refuting the allegation that Nelson was under extreme mental or emotional disturbance.” 850 So.2d at 530. At the evidentiary hearing, trial counsel testified he was concerned that the State would successfully argue that mitigation was not established given the modifying adjective “extreme.” Trial counsel further testified that he was concerned the jury would not give proper weight to the nonstatutory mitigation if certain mitigation was singled out as being statutory. Nelson alleges this strategy cannot be reasonable because it was based on ignorance of the controlling case law. The postconviction court found the tactical decision to be reasonable because the decision not to request the jury instructions on the two mental health mitigators did not prevent the defense from presenting mental health mitigating evidence to the jury from Dr. Dee. We agree with the postcon-viction court and deny this claim.
At the evidentiary hearing, trial counsel was asked whether he had read Bryant v. State, 601 So.2d 529 (Fla.1992); Stewart v. State, 558 So.2d 416 (Fla.1990); and Smith v. State, 492 So.2d 1063 (Fla.1986). Trial counsel testified that he did not recall the cases by their names, but that if they were capital cases, he had probably either read them or read summaries of them. Trial counsel then asked collateral counsel to state what proposition they stood for. The question went unanswered, and collateral counsel moved on to another line of questioning. From this exchange, it does not appear accurate to state that counsel was ignorant of controlling case law. The *33 cases cited establish the right to jury instructions on the statutory mitigating circumstances of extreme mental or emotional disturbance. See, e.g., Bryant, 601 So.2d at 533 (“We have previously stated that the ‘Defendant is entitled to have the jury instructed on the rules of law applicable to this theory of the defense if there is any evidence to support such instructions.’”) (quoting Hooper v. State, 476 So.2d 1253, 1256 (Fla.1985)). Here, trial counsel testified that he was aware he was entitled to the instructions, but made a strategic decision not to request them, opting instead for the “catch-all” instruction. Because Nelson has not demonstrated that this decision was based on ignorance of the law as alleged, he is not entitled to relief.
Competency
Nelson next alleges that he was denied substantive due process because he was tried and convicted while mentally incompetent. This issue fails for two reasons. First, the issue is procedurally barred because he failed to raise it on direct appeal. Second, the record establishes that Nelson was competent at the time of the trial.
“[A] petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence.” James v. Singletary, 957 F.2d 1562, 1571 (11th Cir.1992). “A defendant is considered competent to stand trial if ‘he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and [if] he has a rational as well as factual understanding of the proceedings against him.’” Id. at 1574 (quoting Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). “In order to make out his substantive incompetency claim, petitioner need not ... allege any error on the part of any state actor.” James, 957 F.2d at 1572. “[A] petitioner is entitled to an evidentiary hearing on a substantive incompetency claim if he or she ‘presents clear and convincing evidence to create a real, substantial and legitimate doubt’ as to his or her competency.” Id. at 1573 (quoting Fallada v. Dugger, 819 F.2d 1564, 1568 n. 1 (11th Cir.1987)).
Unlike the petitioner in James, Nelson has had an evidentiary hearing on his post-conviction incompetency claim as well as a competency determination. In both, the court has found Nelson competent. Specifically, the postconviction court denied this claim, stating, “The fact that Mr. Nelson had once tried to commit suicide and was on psychotropic medication does not mean he was incompetent or that the court was required to order a competency evaluation. The evidence supports a conclusion that the Defendant was competent at the time of trial.” Thus, Nelson has not demonstrated that he was denied due process at any level of the proceedings against him. Accordingly, Nelson is not entitled to relief on this claim.
Pate Claim
Next, Nelson argues that the trial court erred by failing to sua sponte order a competency hearing. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), held that once the question of competency is raised, there is a constitutional entitlement to a hearing on the issue of competency. Also, Pate established a re-buttable presumption of incompeteney upon a showing that the trial court failed to hold a competency hearing despite information raising a bona fide doubt as to the petitioner’s competency. See James, 957 F.2d at 1570. However, Pate claims “can and must be raised on direct appeal.” Id. at 1572. Accordingly, this claim is procedurally barred because Nelson raised no such claim in his direct appeal.
*34 HABEAS PETITION
Nelson raises seven claims in his petition for writ of habeas corpus, which can be summarized as follows: (1) section 921.141, Florida Statutes (1997), is facially vague and overbroad; (2) he is incompetent to proceed and also may be incompetent at the time of execution in violation of the Eighth Amendment prohibition against cruel and unusual punishment; (3) trial counsel was ineffective for failing to object to the avoid arrest aggra-vator jury instruction; (4) appellate counsel was ineffective for failing to raise the claim that the evidence was insufficient to prove the avoid arrest aggravator and was also ineffective for failing to raise the cumulative effect of the errors in Nelson’s trial; and (5) the Florida capital sentencing statute is unconstitutional as applied and on its face.
We deny several of Nelson’s claims without further discussion. First, we deny Nelson’s claims that section 921.141, Florida Statutes (1997), is facially vague and overbroad and that the Florida death sentencing statute is unconstitutional as applied because they were not raised on direct appeal and are procedurally barred. Breedlove v. Singletary, 595 So.2d 8, 10 (Fla.1992) (“Habeas corpus is not a second appeal and cannot be used to litigate or relitigate issues which could have been ... or were raised on direct appeal.”). We also deny Nelson’s competency claims because they are not ripe for review and were raised solely for preservation purposes. See State v. Coney, 845 So.2d 120, 137 n. 19 (Fla.2003) (rejecting a claim that defendant was incompetent to be executed where he acknowledged that the claim was not yet ripe and was being raised only for preservation purposes). Nelson’s claim that trial counsel was ineffective is denied because ineffective assistance of trial counsel is not cognizable in habeas corpus. Griffin v. State, 976 So.2d 107, 108 (Fla. 3d DCA 2008) (“Habeas corpus is ... the improper vehicle to address ... the performance of trial counsel.”). Finally, Nelson’s claim that appellate counsel was ineffective for failing to raise a claim of cumulative effect of multiple errors and his claim that Florida’s capital sentencing statute is unconstitutional on its face and as applied are each denied for lack of merit. Nelson’s claim of cumulative effect is likewise without merit because each individual claim is without merit. See Griffin v. State, 866 So.2d 1, 22 (Fla.2003) (“[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail.”). Nelson’s claim that Florida’s capital sentencing statute is unconstitutional is without merit because we have previously found this claim to be without merit. See, e.g., Hudson v. State, 992 So.2d 96, 118 (Fla.2008).
We now address Nelson’s remaining claim that appellate counsel was ineffective for failing to raise the claim that the evidence was insufficient to prove the avoid arrest aggravator. For the reasons set forth below, Nelson is not entitled to habe-as relief on this claim.
Ineffective Assistance of Appellate Counsel
Unlike a claim of ineffective assistance of trial counsel, ineffective assistance of appellate counsel is cognizable in habeas corpus. See Rutherford v. Moore, 774 So.2d 637 (Fla.2000); Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000).
Consistent with the Strickland standard, to grant habeas relief based on ineffectiveness of counsel, this Court must determine:
[F]irst, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency *35 falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman, 761 So.2d at 1069; Thompson v. State, 759 So.2d 650, 660 (Fla.2000). In raising such a claim, “[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based.” Freeman, 761 So.2d at 1069; see also Knight v. State, 394 So.2d 997, 1001 (Fla.1981). Claims of ineffective assistance of appellate counsel may not be used to camouflage issues that should have been presented on direct appeal or in a postconviction motion. See Rutherford, 774 So.2d at 643. “If a legal issue ‘would in all probability have been found to be without merit’ had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel’s performance ineffective.” Id. (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)). Nor can appellate counsel be deemed ineffective for failing to prevail on an issue raised and rejected on direct appeal. Spencer v. State, 842 So.2d 52 (Fla.2003).
This Court has also stated that appellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel’s failure to object. See, e.g., Owen v. Crosby, 854 So.2d 182, 188-89 (Fla.2003); Ferguson v. Singletary, 632 So.2d 53, 58 (Fla.1993) (finding that appellate counsel was not ineffective in failing to raise allegedly improper pros-ecutorial comments made during the penalty phase where trial counsel did not preserve the issues by objection); Medina v. Dugger, 586 So.2d 317, 318 (Fla.1991). The only exception to this is when the claim involves fundamental error. See Roberts v. State, 568 So.2d 1255, 1261 (Fla.1990). Fundamental error is error that “reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.” Kilgore v. State, 688 So.2d 895, 898 (Fla.1997) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)).
Here, Nelson’s complaints stem from the avoid arrest aggravator, which this court upheld because Nelson failed to preserve the issue for appeal. Nelson, 850 So.2d at 525. However, the Court also discussed the merits of the claim, finding that “Nelson expressly agreed with the police when they asked him if he killed Brace because he felt like she could identify him.” Id. at 526. Further, the Court found:
Although Nelson’s admissions to police alone support his intentional elimination of Brace as a witness, other considerations also support the avoid arrest aggravator in this case.... The evidence in this case indicates that Nelson probably could have accomplished the burglary of Brace’s home and sexual battery without killing her since Brace likely posed little physical resistance to Nelson: she was 78 years old; she was awakened from her bed in the middle of the night when she was wearing only a nightgown; and at that time her eyeglasses and hearing aids were on her night stand. Further, Nelson easily obtained access to her car. Therefore, it appears that once Nelson immobilized Brace by putting her in the trunk, he secured an uneontested getaway and there was no reason for him to kill her except to eliminate her as a witness.
*36 Nelson’s act of taking Brace to a remote area to kill her also lends support to the finding of the avoid arrest aggra-vator in this case. The evidence at trial was that Nelson drove to an isolated orange grove to kill Brace, but his plan was stymied when the car became stuck in the sand and he needed the assistance of other people to extricate the car. Nelson then drove to another orange grove where he killed Brace. The record reflects that Nelson’s journey to two different orange groves was intended to find an isolated place to kill Brace, the sole witness to his crimes.
We find no error in the trial court’s finding of the avoid arrest aggravator because the defendant’s own statements and actions corroborate evidence that the sole or dominant murder motive in this case was to silence Brace as the sole witness against him.
Nelson, 850 So.2d at 526 (citations omitted). Accordingly, Nelson’s claim must fail because appellate counsel did raise the claim, which this Court rejected as procedurally barred.
CONCLUSION
For the reasons stated above, we affirm the postconviction court’s order denying Nelson’s rule 3.851 motion, and we deny his petition for writ of habeas corpus.
It is so ordered.
QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.

. Nelson was also tried and convicted of . grand theft, burglary, and sexual battery, for which he received fifteen-year and life sentences.

. Nelson's claims were (1) trial counsel was ineffective for failing to move for a determination of competency; (2) Nelson was tried and convicted while mentally incompetent; (3) trial counsel was ineffective for failing to call a witness in both the guilt and penalty phases of the trial to establish a lack of mens rea in the guilt phase and statutory mental mitigation in the penalty phase; (4) trial counsel was ineffective in the investigation and preparation of the penalty phase by failing to call a witness to establish statutory mitigation in the penalty phase; (5) trial counsel failed to request the court to instruct the jury on statutory mitigation in the sentencing phase; (6) section 921.141, Florida Statute (1997) is facially vague and overbroad causing the death sentence to be premised on a fundamental error; (7) Nelson is incompetent to proceed; (8) trial counsel was ineffective for failing to object to the court instructing the jury on and finding that Nelson killed the victim to avoid arrest despite contrary evidence; (9) the death sentence is cruel and unusual punishment because Nelson may be incompetent at the time of execution; (10) the trial was filled with procedural and substantive error which cannot be harmless when viewed as a whole; (11) the Florida Capital Felony Sentencing Statute is unconstitutional; and (12) Florida’s Capital Felony Sentencing Statute is unconstitutional on its face and as applied, and Nelson received prejudicially ineffective assistance of counsel because trial counsel failed to properly litigate this issue.