PER CURIAM.
James Phillip Barnes, a prisoner under sentence of death, appeals the order of the circuit court denying his initial motion to vacate his conviction for first-degree murder and sentence of death filed under Florida Rule of Criminal Procedure 3.851. Because the order concerns postconviction relief from a capital conviction for which a sentence of death was imposed, this Court has jurisdiction under article V, section 3(b)(1), Florida Constitution. For the reasons expressed below, we affirm the circuit court’s denial of postconviction relief.
BACKGROUND AND FACTS
Barnes was convicted of the 1988 first-degree murder of Patsy Miller in Melbourne, Florida. He was not arrested for that murder and other related charges until some years later when, while in prison for another murder, he confessed to the Miller murder. He subsequently waived counsel and, with standby counsel, entered a guilty plea to all the charges. After Barnes waived mitigation and waived a penalty phase jury, the trial court appointed court counsel to investigate and present mitigation. After the penalty phase, Barnes was sentenced to death and to terms of imprisonment for the related charges of burglary of a dwelling with an assault or battery, two counts of sexual battery by use or threat of a deadly weapon, and arson of a dwelling. This Court affirmed his convictions and sentence in Barnes v. State, 29 So.3d 1010 (Fla.), cert. denied, — U.S.-, 131 S.Ct. 234, 178 L.Ed.2d 155 (2010).
The facts of the murder, based upon Barnes’ written and tape-recorded statements and upon the forensic evidence at the penalty phase, show that on the night of April 20, 1988, Barnes went to Miller’s condominium unit in Melbourne, Florida. Once there, he took off his clothes and entered ■ the apartment after removing a window screen. Barnes admitted that he went there with the intent to both rape and kill Miller. Once inside, Barnes armed himself with a knife and, after secretly watching Miller go about her normal activities for a short period of time, confronted her and forced her at knife-point to the bedroom where he sexually battered her. He then bound her hands behind her back with shoelaces, tied her feet together, and sexually battered.her again. .Barnes admitted that he tried to strangle her with a terrycloth belt but was not successful, so he bludgeoned her in the back of her head with a hammer that he found in her bedroom.
After taking a bank card from Miller’s wallet and collecting everything he touched, Barnes then set fire to the bed where Miller’s body lay. Shortly after 11 *908 p.m., firefighters responded and found Miller’s burned body face down on the bed with her hands bound behind her back. The medical examiner testified that the cause of death was blunt-force trauma from multiple blows to Miller’s head. Signs of attempted strangulation, including a fractured hyoid bone, were also discovered in the autopsy. The medical examiner determined that Miller’s body was set ablaze after she died.
After Barnes confessed, an indictment was issued charging him with first-degree murder, burglary of a dwelling with an assault or battery, two counts of sexual battery by use or threat of a deadly weapon, and arson of a dwelling. Barnes immediately sought to waive counsel and a Faretta hearing was held.[1] He then represented himself throughout the proceedings with standby counsel available at all times. Immediately after the first of many Faretta hearings, Barnes entered an open plea of guilty and waived a sentencing jury. The trial court ordered a pre-sentence investigation (PSI) report and also ordered that Barnes’ school records be obtained. In addition, the court appointed Dr. William Riebsame, a board-certified forensic psychologist, to provide a psychological evaluation of Barnes.
After presentation of aggravating circumstances at the penalty-phase Spencer hearing, Barnes refused to present any evidence of mitigation and announced that he would rely only on the fact that he came forward and took responsibility for the murder. Over Barnes’ objection, the court appointed special mitigation counsel to investigate and present any mitigation at a second Spencer hearing. After mitigation was presented, the sentencing order was entered on December 13, 2007, finding that the six aggravating factors[2] outweighed the one statutory mitigator and nine nonstatutory mitigators.[3] The court imposed a death sentence for the murder, separate life sentences for each of the burglary with battery and sexual battery counts, and a thirty-year sentence for the arson.
Barnes raised two issues on direct appeal: (1) whether the trial court violated Barnes’ Sixth Amendment right to repre *909 sent himself when it appointed special court counsel to develop penalty-phase mitigation; and (2) whether the trial court reversibly erred in considering the PSI report over Barnes’ objection that it contravened his constitutional right to confront witnesses against him. We held that the trial court did not violate Barnes’ right of self-representation by appointing special court counsel to investigate and present mitigation, which was a proper procedure under Muhammad v. State, 782 So.2d 343, 364 (Fla.2001) (holding that where a defendant waives mitigation, the trial court has discretion to appoint counsel to present mitigation). Barms, 29 So.3d at 1023. We also held that Barnes’ claims concerning the PSI were procedurally barred and without merit. Id. at 1026.
Barnes filed his initial motion for post-conviction relief on September 21, 2011, raising two claims, both of which were summarily denied: (1) whether his standby counsel or the trial court sua sponte should have ordered a competency hearing before allowing him to plead guilty,[4] and (2) whether he may be insane at the time of execution. After a Huff hearing, the circuit court summarily denied Barnes’ claims.[5] In its order entered on January 23, 2012, the circuit court set forth the facts of the case and then concluded in pertinent part as follows:
b.The Defendant represented himself pro se throughout the guilt and penalty phases in this case in which he was charged with Ms. Miller’s murder. The Honorable Judge Lisa Davidson presided over the guilt and penalty phases in this case. Judge Davidson appointed the Office of the Public Defender as standby counsel. Assistant Public Defender Phyllis Riewe'served as standby counsel for the Defendant during the guilt phase and Assistant Public Defender Randy Moore served as standby counsel for the Defendant during the penalty phase.
c. On May 2, 2006, the Defendant entered an “open” plea of guilty to the charged crimes of first-degree premeditated murder (Count I)....
d. On May 2, 2006, the Defendant waived his right to a jury recommendation and requested that the Court proceed to sentencing without the benefit of the jury’s recommendation as to the imposition of life or death on Count I— First Degree Premeditated Murder. Judge Davidson found that the Defendant knowingly, freely, and voluntarily chose to forego a jury for the penalty phase. The Defendant explained that he was making a strategic decision to have a judge alone determine his sentence. (See Exhibit “A,” pgs. 45, 53).
e. The Defendant represented himself pro se at the sentencing hearing and specifically chose not to present mitigating evidence or argument at the penalty phase, other than the fact thát he came forward and took responsibility....
[[Image here]]
g. On May 11, 2006, Judge Davidson ordered that a comprehensive pre-sen-tence investigation (PSI) be conducted, and on February 7, 2007, Judge Davidson appointed attorney Sam Baxter *910 Bardwell as special mitigation counsel to investigate and present any other mitigation evidence because the Defendant refused to present any mitigating evidence on his behalf other than that evidence already placed on the record....
h. On November 16, 2007, the Court held a hearing at which Mr. Bardwell presented alleged mitigating evidence to the Court....
[[Image here]]
1. On January 12, 2012, the case management conference was held before the undersigned judge. The purpose of a case management conference was to hear argument on purely legal claims not based on disputed facts and to schedule an evidentiary hearing on claims requiring a factual determination. Fla. R.Crim. P. 3.851(f)(5)(A). The Court concludes as a matter of law that the claims in the subject motion for postconviction relief do not require an evidentiary hearing, and should be summarily denied.
The order further recited that the trial judge conducted an extensive Faretta hearing before allowing Barnes to appear pro se and enter his plea. In that hearing Barnes disclosed that he had thirteen years of school, including one year of college, was a certified law clerk through the Department of Corrections, and had worked in the prison law library. The circuit court noted that the trial judge found Barnes to be “extremely competent,” that he understood what was happening, that he understood the advantages and disadvantages of self-representation, and that he was waiving future claims of ineffective assistance of counsel. The postconviction order emphasized that the trial judge found Barnes to be “alert, competent, and intelligent,” “very definite” in his speech, and “extremely alert,” and that on direct appeal, this Court found the plea was knowing, intelligent, and voluntary. See Barnes, 29 So.3d at 1020-22.
As to Barnes’ claim that the trial court erred by not sua sponte ordering a competency hearing after being told by Barnes that he had been “Baker Acted” sometime in 1990 and had at some point been diagnosed with borderline personality disorder, the circuit court held that the claim was procedurally barred because it could and should have been raised on direct appeal. To the extent Barnes was raising a substantive claim of violation of due process for being convicted and sentenced while incompetent, the circuit court denied relief, citing Nelson v. State, 43 So.3d 20, 33 (Fla.2010), for the holding that to assert such a claim Barnes was required to show “clear and convincing evidence to create a real, substantial and legitimate doubt” as to competency. The circuit court then concluded that the facts alleged by Barnes failed to create any real, substantial or legitimate doubt as to his competency. The circuit court also noted that neither the trial court nor the counsel who were present had any doubt about Barnes’ competency. The order concluded:
The “reasonable grounds” proffered in the Rule 3.851 motion are refuted by the record. In the subject case, there were no indications of Defendant’s incompetence, distinguishable factually from the cases cited by the Defendant in his postconviction motion. The record shows that that Defendant was not only competent, but also intelligent. There was no reason for a competency evaluation.
As to the claim that standby counsel was ineffective for failing to seek a competency determination, the circuit court denied relief, holding that a defendant who represents himself has the entire responsibility for his own defense even if he has standby counsel. Finally, the circuit court denied *911 relief on Barnes’ claim that he may be incompetent at the time of execution because such a claim is not ripe for review until a death warrant is signed. This appeal ensued in which Barnes contends that the circuit court erred in denying his initial postconviction motion without an eviden-tiary hearing.
ANALYSIS
Standard of Review
“A defendant is normally entitled to an evidentiary hearing on a postconviction motion ‘unless (1) the motion, files, and records in the case conclusively show that the movant is entitled to no relief, or (2) the motion or particular claim is legally insufficient.’ ” Valentine v. State, 98 So.3d 44, 54 (Fla.2012) (quoting Franqui v. State, 59 So.3d 82, 95 (Fla.2011)). An evidentia-ry hearing must be held on an initial 3.851 motion whenever the movant makes a facially sufficient claim that requires factual determination. See Amendments to Fla. Rules of Crim. Pro. 3.851, 3.852, & 3.993, 772 So.2d 488, 491 n. 2 (Fla.2000). “[T]o the extent there is any question as to whether a rule 3.851 movant has made a facially sufficient claim requiring a factual determination, the Court will presume that an evidentiary hearing is required.” Walker v. State, 88 So.3d 128, 135 (Fla.2012). However, merely conclusory allegations are not sufficient — the defendant bears the burden of “establishing a ‘prima facie ease based on a legally valid claim.’ ” Valentine, 98 So.3d at 54 (quoting Franqui, 59 So.3d at 96).
“To uphold the trial court’s summary denial of claims raised in an initial postconviction motion, the record must conclusively demonstrate that the defendant is not entitled to relief.” Everett v. State, 54 So.3d 464, 485 (Fla.2010). When reviewing the circuit court’s summary denial of an initial rule 3.851 motion, we will accept the movant’s factual allegations as true and will affirm the ruling only if the filings show that the movant has failed to state a facially sufficient claim, there is no issue of material fact to be determined, the claim should have been brought on direct appeal, or the claim is positively refuted by the record. See Walker, 88 So.3d at 135. Finally, “[b]ecause a court’s decision whether to grant an evidentiary hearing on a rule 3.851 motion is ultimately based on written materials before the court, its ruling is tantamount to a pure question of law, subject to de novo review.” Seibert v. State, 64 So.3d 67, 75 (Fla.2010) (citing State v. Coney, 845 So.2d 120, 137 (Fla.2003) (holding that pure questions of law that are discernable from the record are subject to de novo review)). With these principles in mind, we turn first to Barnes’ claim that the trial court, sua sponte, was required to order a competency evaluation before allowing Barnes to plead guilty.
Discussion
Barnes first contends that the trial court, sua sponte, should have ordered a competency evaluation after Barnes advised the court at his first Faretta hearing that he had been “Baker Acted” once in 1990 for three days for observation and at some point had been diagnosed with borderline personality disorder.[6] Even though he is clearly competent, Barnes asks this Court to vacate his conviction and sentence.and allow.him the opportunity to withdraw his plea because no formal determination of competency was made at the time of trial.
*912 This Court has many times held that postconviction proceedings are not to be used as a second appeal, and that claims that were or could have been raised on direct appeal are proeedurally barred in postconviction. See, e.g., Willacy v. State, 967 So.2d 131, 141 (Fla.2007) (holding that postconviction proceedings cannot be used as a second appeal and claims that could have been brought on direct appeal are proeedurally barred); see also Nelson, 43 So.3d at 33 (holding that a claim that the trial court erred in not holding a competency hearing despite information suggesting incompetency is proeedurally barred if not raised on direct appeal); Carroll v. State, 815 So.2d 601, 610 (Fla.2002) (holding that claim of inadequate competency determination should have been raised on direct appeal and is proeedurally barred in postconviction proceeding); Patton v. State, 784 So.2d 380, 393 (Fla.2000) (holding that claim of inadequate competency hearing is proeedurally barred because it should have been raised on direct appeal). Thus, Barnes’ claim that the trial court erred in not sua sponte ordering a competency determination is proeedurally barred, as the postconviction court concluded.
Even if not barred, this claim has no merit because it is conclusively refuted by the record. A reading of the hearing transcript relied on by Barnes as evidence that the trial court should have ordered a competency determination shows that nothing Barnes said or did in that hearing would provide a reasonable ground for the court to believe he was incompetent to proceed. Florida Rule of Criminal Procedure 3.210 provides in pertinent part as follows:
(b) Motion for Examination. If, at any material stage of a criminal proceeding, the court of its own motion, or on motion of counsel for the defendant or for the state, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court shall immediately enter, its order setting a time for a hearing to determine the defendant’s mental condition....
“A defendant is incompetent to proceed ... if the defendant does not have sufficient present ability to consult with her or his lawyer with a reasonable degree of rational understanding or if the defendant has no rational, as well as factual, understanding of the proceedings against her or him.” §' 916.12(1), Fla. Stat. (2006). “As this Court succinctly stated in State v. Tait, 387 So.2d 338, 340 (Fla.1980), the issue is “whether any information coming before the court before or during [trial] provided reasonable ground to believe that the defendant’s mental condition was such that he was incompetent.’ This Court will uphold the trial court’s decision as to whether such a hearing is necessary absent an abuse of discretion.” Rodgers v. State, 3 So.3d 1127, 1132 (Fla.2009) (quoting Lawrence v. State, 846 So.2d 440, 447 (Fla.2003), and citing Hunter v. State, 660 So.2d 244, 248 (Fla.1995)).
In the present case, the trial court record supports the trial judge’s conclusion that Barnes was intelligent, understood court procedure, and was completely capable of representing himself. As the post-conviction court noted, Barnes advised the trial court at his Faretta hearing that he had one year of college and that he had prior experience, education, and knowledge of the court system. Barnes stated that he had taken several criminal justice courses and was a certified law clerk at the Department of Corrections. Barnes advised the trial court that he had worked in the prison law library for twenty years and had watched a criminal trial. .He stated that he had never been treated for any mental illness, although he had been diag *913 nosed as having a personality disorder. The fact that he was observed for three days at a state hospital and then released does not provide a reasonable ground for the trial judge to believe Barnes was incompetent. Similarly, the fact that Barnes told the trial court that he had once been diagnosed with a personality disorder does not obligate the trial court to order a competency evaluation. “[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present, inability to assist counsel or understand the charges.” Card v. Singletary, 981 F.2d 481, 487-88 (11th Cir.1992) (quoting U.S. ex rel. Foster v. DeRobertis, 741 F.2d 1007, 1012 (7th Cir.1984)). Moreover, we noted in Nelson that the fact of a prior suicide attempt and the administration of a powerful antipsychotic drug did not necessarily create a reasonable doubt of defendant’s competency or render the defendant incompetent to proceed. See Nelson, 43 So.3d at 29.
The record reflects that throughout the trial proceedings, Barnes filed and argued numerous motions before the court. He lodged objections to evidence and comported himself well in court. The transcript of the May 2, 2006, Faretta/plea hearing shows that Barnes appeared alert and knowledgeable. Throughout the hearing, Barnes made clear that he understood the consequences of his decision to represent himself and to plead guilty, that he knew the possible sentence was death, and that he understood an attorney is trained to assist in such proceedings. Nothing in the record of the May 2, 2006, hearing, or thereafter, would reasonably have caused the court to doubt that Barnes was competent. In fact, the trial court stated at the Faretta hearing:
THE COURT: All right. Mr. Barnes, at this time then I’m going to find that you are competent. In fact, you appear to be extremely competent. Your demeanor, the way you’ve addressed the [cjourt, the way you — I mean, not only what you’ve said but your presentation convinces me that you are. competent, you understand what is happening here today, that you have knowingly, freely and voluntarily exercised your decision to represent yourself, that you are waiving the right to counsel for no other reason other than the fact that you want to represent yourself and that you — you know, this is a knowing and intelligent waiver and that you have the capacity to make that knowing and intelligent waiver and that you understand the advantages and disadvantages of representing yourself.
[[Image here]]
BY THE COURT: Okay. Mr. Barnes, because I’m finding you intelligent and knowingly making this request, that you have the ability to make this request because you are intelligent and competent to make this request later down the line if you — for whatever reason your strategy, whatever that strategy may be does not work out, you’re not going to be able to say well, you know, I was representing myself_And do you understand that?
A [BARNES]. I understand. I’m ready to enter a plea right now on all cases.
The trial court clearly believed, based on the colloquy that occurred and on Barnes’ conduct and statements, that Barnes was competent even though no formal competency evaluation or • determination was made. Nothing in the trial proceedings provided a reasonable ground for the trial court to doubt Barnes’ competency to proceed such that a competency evaluation should have been ordered. The trial court’s conclusions were similar to this *914 Court’s conclusion in Rodgers, where we rejected the claim that a competency hearing should have been ordered, stating:
Rodgers’ statements to the court showed that he understood the consequences of his decisions and that Rodgers weighed his options of a life sentence or a death sentence in a rational and careful manner. The defendant clearly showed the capacity to appreciate the proceedings and the nature of possible penalties; he showed that he understood the adversary nature of the legal process;. he manifested appropriate courtroom behavior; and he was able to testify in a relevant manner.
Rodgers, 3 So.3d at 1132-33.
In support of his argument that the trial court should have sua sponte ordered a competency evaluation, Barnes also cites a colloquy which occurred in the May 2, 2006, hearing when he advised the trial judge that he was waiving presentation of mitigation. The trial judge responded that he was required by law to consider mitigation and would appoint court counsel to investigate and present mitigation on Barnes’ behalf despite his objection, and the following colloquy occurred:
Q [THE COURT] As much as you don’t want an attorney to represent you, I need to know any mitigating factors that would help me make this decision.
A [BARNES] Okay. I believe that it would harm me greatly if you were going to appoint an attorney for the Spencer hearing. I wish to waive counsel and represent myself in the final phase. It’s part of my strategy.
As far as offering mitigating circumstances, I believe that I have something in mind.
Q [THE COURT].... I’m going to appoint an attorney. Okay? I need to follow the statute. The statute says I must consider any mitigating circumstances. That — that attorney doesn’t— is not being appointed for you. It’s being appointed for the Court.
A [BARNES] That’s - ... I don’t know how to put into words how you bifurcate that. I just don’t understand how you can say the Court’s appointing an attorney for the Court. I mean, the State Attorney is the State’s Attorney. I mean, that’s his job to do that.
If you’re trying to appoint somebody to protect me or defend me, I don’t need that. And I don’t want it.
Barnes now contends that this exchange proves he was unaware of the State Attorney’s proper role and that he erroneously believed it was the prosecutor’s job to present mitigation. Barnes argues that this is evidence of his incompetence because it showed his lack of understanding of the adversarial process. Even if, as Barnes contends, the colloquy refers to the prosecutor presenting mitigation, Barnes would not have been wrong. The prosecutor has an obligation to “make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor.” Muhammad, 782 So.2d at 364 n. 11 (quoting Florida Rule of Professional Conduct 4 — 3.8(c)). We also made clear in Muhammad that in a capital sentencing case where the defendant waives mitigation, “the trial court' could require the State to place in the record all evidence in its possession of a mitigating nature such as school records, military records, and medical records.” Id. at 363-64 (footnote omitted). However, Barnes’ statement to the court could also be interpreted as simply reiterating his strong objection to any mit *915 igation being presented. Thus, Barnes’ statements in this colloquy do not provide a reasonable ground for the trial court to believe that Barnes was incompetent to proceed.
Barnes also makes a substantive due process claim that he was allowed to enter a plea to a capital offense while incompetent.[7] The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits states from trying and convicting mentally incompetent defendants. See Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); James v. Singletary, 957 F.2d 1562, 1569-70 (11th Cir.1992). We have held that such a claim is generally procedurally barred where the defendant failed to raise it on direct appeal. See Nelson, 43 So.3d at 33; Carroll, 815 So.2d at 610. However, such a claim has been allowed in postconviction under limited circumstances where the facts are compelling that the defendant was tried and convicted while incompetent. See, e.g., Jones v. State, 478 So.2d 346, 347 (Fla.1985) (postconviction claim allowed and hearing granted where affidavits and expert opinions supported claim that Jones suffered from organic brain damage and was incompetent). In rejecting a claim that the defendant was tried while incompetent in Bush v. Wainwright, 505 So.2d 409 (Fla.1987), we distinguished the circumstances in Jones where there was a long psychiatric history indicating Jones’ incompetency. See id. at 410-11. We held in Bush that the report of newly appointed experts that Bush had a learning disability, a passive and dependent personality, and possible “diffuse organic brain damage” did not sufficiently raise a valid question as to Bush’s competency to stand trial.
In this case, the facts asserted by Barnes in his motion do not raise a valid question as to his competency to stand trial, and our review of the trial court record discloses no basis on which to conclude otherwise. We explained in Nelson:
“[A] petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence.” James v. Singletary, 957 F.2d 1562, 1571 (11th Cir.1992). “A defendant is considered competent to stand trial if ‘he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and [if] he has a rational as well as factual understanding of the proceedings against him.’ ” Id. at 1574 (quoting Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). “In order to make out his substantive incompetency claim, petitioner need not ... allege any error on the part of any state actor.” James, 957 F.2d at 1572. “[A] petitioner is entitled to an evidentiary hearing on a substantive incompetency claim if he or she ‘presents dear and convincing evidence to create a real, substantial and legitimate doubt ’ as to his or her competency.” Id. at 1573 (quoting Fallada v. Dugger, 819 F.2d 1564, 1568 n. 1 (11th Cir.1987)).
Nelson, 43 So.3d at 33 (emphasis added). In denying an evidentiary hearing on this claim, the postconviction court concluded that Barnes failed to allege or identify *916 clear and convincing evidence necessary to support a substantive claim of incompetency, stating:
Defendant cannot make the requisite showing of incompetence for a substantive claim of incompetency as shown by the record and cited in the preceding paragraphs of this Order. The Defendant consulted with standby counsel and talked with court counsel. No counsel, prosecutor, or judge had any doubt the Defendant was not competent as shown by the record. Judge Davidson found the Defendant “extremely competent” to represent himself after learning from the Defendant that he had been Baker Acted in 1990, had been diagnosed with borderline personality disorder, and hearing Defendant’s comments regarding mitigation evidence. Judge Davidson had the opportunity to observe the Defendant on several occasions and numerous Faretta inquiries were conducted throughout the case because the Defendant continued to reject offers of counsel.... In the subject case, there were no indications of Defendant’s incompetence, distinguishable factually from the cases cited by the Defendant in his postconviction motion. The record shows that the Defendant was not only competent, but also intelligent. There was no reason for a competency evaluation.
We agree. As discussed earlier, nothing alleged in Barnes’ motion or cited by Barnes from the record of the May 2, 2006, hearing or elsewhere in the trial record would provide any evidence, not to mention clear and convincing evidence, creating a real, substantial, and legitimate doubt that Barnes was convicted and sentenced while incompetent to proceed. Thus, for these reasons the circuit court correctly denied Barnes’ substantive due process claim without a hearing.
Barnes further contends that because “death is different,” and because he was once diagnosed as having a personality disorder, a competency determination is essential to ensure that his constitutional rights are protected and to protect the integrity of the process. However, this is neither supported by case law nor by the Florida Statutes. Section 916.12(1), Florida Statutes (2006), provides that a defendant is incompetent to proceed if he does not have the present ability to consult with his attorney with a reasonable degree of rational understanding or if the defendant has no rational as well as factual understanding of the proceedings against him. Rule 3.210 implements this statutory requirement and places the burden on counsel and the court to seek a competency determination, but only if they have “a reasonable ground to believe that the defendant is not mentally competent to proceed.” See Fla. R.Crim. P. 3.210(b). Thus, there is no blanket requirement that all capital defendants who may have once been diagnosed as having a mental disorder be evaluated for competency, even those who appear pro se.
As an additional aspect of Barnes’ first issue on appeal, he contends that standby counsel was deficient in failing to move the trial court for a competency determination.[8] Barnes contends that *917 as soon as standby counsel became aware during the May 2, 2006, hearing that Barnes was suffering from personality disorder and had been “Baker Acted” in the past, she should have requested a competency determination. The postconviction court denied the claim, concluding that standby counsel had no obligation to request a competency hearing on Barnes’ behalf because Barnes acted pro se and a “defendant who represents himself has the entire responsibility for his own defense even if he has standby counsel and cannot later claim that the quality of his defense was a denial of effective assistance of counsel,” citing Behr v. Bell, 665 So.2d 1055, 1056-57 (Fla.1996). The trial court also concluded that even if standby counsel had such an obligation, nothing in the record, including the transcript of the May 2, 2006, Faretta/plea hearing, provided a reasonable ground for standby counsel to doubt Barnes’ competency.
We held in Behr that “[a] defendant who represents himself has the entire responsibility for his own defense, even if he has standby counsel. Such a defendant cannot thereafter complain that the quality of his defense was a denial of ‘effective assistance of counsel.’ ” Id. at 1056-57 (quoting Faretta, 422 U.S. at 833 n. 46, 95 S.Ct. 2525). At the May 2, 2006, Faretta hearing, the following colloquy took-place:
Q [COURT] Do you understand that at every stage of these proceedings I’m going to have standby counsel for you. You will still represent yourself. But that standby counsel will be there solely to assist you in representing yourself. But you are going to be the person to represent yourself if you decide that you still want me to allow you to represent yourself. Do you understand that?
A [BARNES] Standby counsel is solely at your discretion. And I understand that and that at any time I feel that I need to ask them [a] question they’d be there for me.
Thus, Barnes was advised that as a pro se defendant, even with standby counsel, he was responsible for his own representation.[9] Barnes’ argument now misapprehends the role of standby counsel when a defendant is exercising his or her constitutional right of self-representation. The United States Supreme Court in Faretta held that a state may, over the pro se defendant’s objection, appoint “standby counsel” to “aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant’s self-representation is necessary.” Faretta, 422 U.S. at 834 n. 46, 95 S.Ct. 2525 (emphasis added).
Standby counsel in the instant case had no obligation to either request a competency determination for Barnes or suggest that the trial court order one. Standby counsel was designated at the outset of the Faretta /plea hearing with the understanding that Barnes could consult standby counsel if he wished to do so. Barnes did not elect to consult with standby counsel and insisted he was fully capable of representing himself. In any event, we agree *918 with the circuit court that regardless of whether standby counsel had any legal responsibility or authority in this case to request a competency determination, nothing in the record or the motion submitted by Barnes presents a reasonable ground for standby counsel to doubt Barnes’ competency to proceed. Thus, summary denial of this claim was proper.
Finally, Barnes claims that his death sentence violates the Eighth Amendment prohibition against cruel and unusual punishment because he may be incompetent at the time of execution. He concedes that this claim is not ripe for review and is being raised for federal preservation purposes only. Florida Rule of Criminal Procedure 3.811, titled “Insanity at Time of Execution: Capital Cases,” provides that “[a] person under sentence of death shall not be executed while insane to be executed.” Fla. R.Crim. P. 8.811(a). This rule essentially implements the mandate of the United States Supreme Court’s plurality decision in Ford v. Wainwright, 477 U.S. 399, 410, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), that the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane. In order for insanity to bar execution, the prisoner must lack the capacity to understand the nature of the death penalty and why it is being imposed. See § 922.07(3), Florida Statutes (2012); Johnston v. State, 27 So.3d 11, 26 n. 8 (Fla.), cert. denied, — U.S.-, 131 S.Ct. 459, 178 L.Ed.2d 292 (2010); see also Ford, 477 U.S. at 421-22, 106 S.Ct. 2595 (Powell, J., concurring in part and concurring in the judgment) (“A number of States have more rigorous standards, but none disputes the need to require that those who are executed know the fact of their impending execution and the reason for it.” (footnote omitted)).
As Barnes concedes, this claim is not ripe for review. We have repeatedly held that this claim may not be asserted until a death warrant has been issued. See, e.g., Johnson v. State, 104 So.3d 1010, 1029 (Fla.2012) (“Considering that no death warrant has been signed in this case, the postconviction court’s summary denial of Johnson’s claim was proper.”); Butler v. State, 100 So.3d 638, 672 (Fla.2012) (“[A] claim of incompetency to be executed cannot be asserted until a death warrant has been issued.”) (quoting Green v. State, 975 So.2d 1090, 1115-16 (Fla.2008)), cert. denied, — U.S. -, 133 S.Ct. 1726, 185 L.Ed.2d 789 (2013); Phillips v. State, 894 So.2d 28, 36 (Fla.2004) (“[T]his claim cannot be raised until an execution is imminent.”); Jones v. State, 845 So.2d 55, 74 (Fla.2003) (rejecting claim that defendant may be incompetent at the time of execution where a death warrant had not yet been signed, noting that the claim was raised to preserve the issue for federal review). Because a death warrant has not been issued in this case, the claim was properly denied.
CONCLUSION
For the reasons set forth above, we conclude that the circuit court did not err in summarily denying Barnes’ motion for postconviction relief from his conviction and sentence of death for the first-degree murder of Patsy Miller. Accordingly, we affirm the circuit court’s summary denial of Barnes’ claims.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

. The trial court found the following aggrava-tors: (1) the murder was committed by one under sentence of imprisonment or on community control or felony probation (great weight); (2) Barnes was previously convicted of another capital felony or felony involving use or threat of violence (murder of his wife in 1997) (great weight); (3) the murder was committed while Barnes was engaged in commission of a sexual battery and burglary (great weight); (4) the murder was committed for the purpose of avoiding or preventing a lawful arrest (great weight); (5) the murder was especially heinous, atrocious, or cruel (great weight); and (6) the murder was cold, calculated and premeditated (great weight). See Barnes, 29 So.3d at 1015 n. 3.

. The trial court found one statutory miti-gator, that Barnes was under the influence of extreme mental or emotional disturbance, and accorded it slight weight. Barnes, 29 So.3d at 1014 n. 4. The nonstatutory miti-gators were: (1) Barnes came forward and revealed his involvement in the unsolved crime (little weight); (2) he took responsibility for his acts (little weight); (3) he was under the influence of a mental or emotional disturbance (duplicating the statutory mitigator) (little weight); (4) he has experienced prolonged drug use (little weight); (5) he did not have the benefit of a loving relationship with his mother (little weight); (6) he did not have the benefit of a loving relationship with his father (little weight); (7) he was sexually abused as a child (slight weight); (8) he has taken steps to improve himself (little weight); and (9) he is a functional and capable person and has demonstrated by his action and participation in this case that he has sufficient intelligence and capabilities to contribute to society (little weight). Id. at 1014 n. 5.

. After postconviction counsel moved for a competency evaluation of Barnes, the circuit court appointed Howard Bernstein, Ph.D., and Jeffrey Danziger, M.D., to perform the evaluations. Their reports were filed in November 2011 and each concluded that although Barnes suffers from a personality disorder, he is competent to proceed. The parties stipulated to the competency evaluation reports and the circuit court found Barnes competent to proceed without objection.

. Huff v. State, 495 So.2d 145 (Fla.1986).

. The "Baker Act," sections 394.451-394.4789, Florida Statutes, also known as the "Florida Mental Health Act," provides for civil commitment for mental health care or treatment.

. This type of substantive due process claim is distinguished from a "Pate" claim, which arises when the trial court fails to order a competency determination despite information raising a bona fide doubt as to petitioner’s competency. See James v. Singletary, 957 F.2d 1562, 1572 n. 15 (11th Cir.1992). A "Pate " claim "can and must be raised on direct appeal.” Nelson, 43 So.3d at 33 (quoting James, 957 F.2d at 1572).

. Barnes contends that he was entitled to an evidentiary hearing to present the testimony of standby counsel Phyllis Riewe. However, he advised the postconviction judge that he had never deposed Riewe. He did not include any allegations in the motion or attach any affidavits or depositions concerning how Riewe viewed her role as standby counsel or how she interpreted Barnes' statements to the postconviction court which Barnes now contends demonstrated his incompetence. At the January 12, 2012, Huff hearing, Barnes’ post-conviction counsel argued only that he need *917 ed to present Riewe’s testimony “to totally explore this issue of competency.”

. The advisory given to Barnes was similar to that approved in Amendment to Florida Rule of Criminal Procedure 3.111(d)(2)-(3), 719 So.2d 873 (Fla.1998), in which this Court approved a model Faretta colloquy. In cases where standby counsel is being appointed, the model colloquy recommends that the trial judge advise the defendant: "I will appoint standby counsel to assist you. However, you will still be responsible for the organization and-content of presenting your case. You still have the entire responsibility for your own defense. Do you understand that?” Id. at 878.