# Supreme Court of Florida

————————

No. SC17-1050

————————

**JEREMIAH M. RODGERS,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[February 8, 2018]

PER CURIAM.

Jeremiah M. Rodgers, a prisoner under sentence of death who waived a penalty phase jury, appeals the circuit court's summary denial of a postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.851 seeking sentencing relief pursuant to *Hurst v. Florida*, 136 S. Ct. 616 (2016), and *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017). We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const.[1]

_____

1. We review the summary denial of a postconviction motion de novo. *Barnes v. State*, 124 So. 3d 904, 911 (Fla. 2013).

We have consistently held that the *Hurst* decisions do not apply to defendants, like Rodgers, who waive a penalty phase jury. *See, e.g.*, *Mullens v. State*, 197 So. 3d 16, 40 (Fla. 2016) (affirming the death sentence of a defendant who waived a penalty phase jury and explaining that a defendant "cannot subvert the right to jury factfinding by waiving that right and then suggesting that a subsequent development in the law has fundamentally undermined his sentence"), *cert. denied*, 137 S. Ct. 672 (2017); *Brant v. State*, 197 So. 3d 1051, 1079 (Fla. 2016) (concluding that the *Mullens* Court's holding in the context of a direct appeal "necessarily preclude[s]" a defendant who waived a penalty phase jury from raising a *Hurst* claim on postconviction).

Rodgers, however, seeks to avoid this result by attacking the waiver itself, arguing that an evidentiary hearing is required to determine if a recently diagnosed condition of gender dysphoria, which Rodgers contends existed at the time of the waiver, but went undiagnosed by prior evaluators, rendered Rodgers incompetent. We agree with the circuit court that the time for Rodgers to contest the prior competency determination has passed. *See* Fla. R. Crim. P. 3.851(d)(1). This Court has long since affirmed Rodgers' waiver of a penalty phase jury, *see Rodgers v. State*, 3 So. 3d 1127, 1131-33 (Fla. 2009), and Rodgers has not proffered any newly discovered evidence that would warrant revisiting the validity of this waiver. *Cf. Raleigh v. State*, 932 So. 2d 1054, 1060 (Fla. 2006)

(recognizing a "narrow exception to th[e] general procedural bar" of allowing an *Ake v. Oklahoma*, 470 U.S. 68 (1985)-type claim of inadequate mental health assistance that should have been raised on direct appeal to instead be raised on postconviction for only those cases involving "psychiatric examinations so grossly insufficient that they ignore clear indications of either mental retardation or organic brain damage") (quoting *State v. Sireci*, 502 So. 2d 1221, 1224 (Fla. 1987)).

Accordingly, we affirm the circuit court's summary denial.

It is so ordered.

LABARGA, C.J., and LEWIS, QUINCE, CANADY, POLSTON, and LAWSON, JJ., concur.
PARIENTE, J., concurs in result with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

PARIENTE, J., concurring in result.

The issue in this case is whether Rodgers' waivers of the right to a penalty phase jury and the right to postconviction proceedings and counsel should be rendered invalid because Rodgers was suffering from undiagnosed and untreated gender dysphoria[2] when he made the waivers. *See Rodgers v. State* (*Rodgers III*),

---

2. The American Psychiatric Association defines "gender dysphoria" as "a conflict between a person's physical or assigned gender and the gender with which he/she/they identify." *What is Gender Dysphoria?*, Am. Psychiatric Ass'n, https://www.psychiatry.org/patients-families/gender-dysphoria/what-is-gender-dysphoria (last visited Nov. 8, 2017).

No. SC11-1401, 104 So. 3d 1087, 2012 WL 5381782, *1-2 (Fla. Oct. 17, 2012) (unpublished); *Rodgers v. State* (*Rodgers II*), 3 So. 3d 1127, 1130 (Fla. 2009). Because both the trial court and this Court were aware of Rodgers' long history of mental illness in determining Rodgers' competency to make the waivers and in reviewing Rodgers' waivers, respectively, I agree that Rodgers' waivers remain valid and, therefore, he is not entitled to *Hurst*[3] relief. *See Silvia v. State*, No. SC17-337 (Fla. Feb. 1, 2018); *Mullens v. State*, 197 So. 3d 16, 38-40 (Fla. 2016). I write separately to emphasize the troubling history of Rodgers' mental illness.

**Direct Appeal in 2006**

Rodgers pleaded guilty as a principal to the first-degree murder at issue in this case. *Rodgers v. State* (*Rodgers I*), 934 So. 2d 1207, 1210 (Fla. 2006). Rodgers then attempted to withdraw his plea and later waived his right to a guilt phase jury trial, again entering a plea. *Id.* at 1214. After pleading guilty, Rodgers was sentenced to death following the jury's 9-3 recommendation for death. *Id.* at 1213.

On direct appeal, this Court affirmed the trial court's decision prohibiting Rodgers from withdrawing his plea, finding that "Rodgers understood at the time of his plea that his attorneys disagreed on whether he should enter the plea." *Id.* at

---

3. *Hurst v. State* (*Hurst*), 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017); *see Hurst v. Florida*, 136 S. Ct. 616 (2016).

1216.  As to Rodgers' sentence of death, this Court reversed and remanded for a new penalty phase after determining that the trial court erred in excluding evidence related to two potential mitigating circumstances regarding domination by the codefendant.  *Id.* at 1219-20.  As to the mitigation, including Rodgers' difficult childhood and his long history of suicide attempts, this Court explained:

> Angela Mason, a social worker, reviewed a variety of records from schools, institutions, hospitals, and law enforcement agencies.  The records contained reports that Rodgers was given his first beer at two years of age and that he reported sexual abuse by his mother numerous times, starting at age three.  At fourteen, Rodgers reported that his mother had full sexual intercourse with him on multiple occasions, first getting him high on marijuana that was laced with formaldehyde.  Although Child Protection Services was called about the abuse, Mason was unable to find any investigative report.  Another report stated that Rodgers' father threatened to shoot him and put an unloaded gun to Rodgers' head.  At school, Rodgers was placed in a class for severely emotionally disturbed children.  Rodgers attempted suicide five times by the age of thirteen, including slitting his wrists in a bathtub which left physical evidence.
>     David Foy, a professor of psychology at Pepperdine University, reviewed Rodgers' medical records and testified that six out of the six classic risk factors for mental illness existed in Rodgers' childhood home life. Rodgers was diagnosed with post-traumatic stress disorder.  Dr. Sarah Deland, a psychiatrist, testified as an expert regarding Rodgers' mental health.  Dr. Deland stated that Rodgers' diagnoses were post-traumatic stress disorder, disassociative disorder, substance abuse in remission, and borderline personality disorder.  She testified in depth about these particular diagnoses and how Rodgers' life events shaped his development.

*Id.* at 1213.  The Court concluded: "Given the extensive mitigation which was presented in the case, including Rodgers' *significant mental health history*, we cannot say that the State has shown that there is no reasonable possibility that the

error in excluding this evidence did not contribute to the sentence of death." *Id.* at 1219-20 (emphasis added).

### Direct Appeal from Resentencing in 2009

On remand for resentencing, Rodgers waived his right to a penalty phase jury. *Rodgers II*, 3 So. 3d at 1130. Rodgers also waived his right and did not allow his attorneys to present evidence of mitigation other than his own testimony. *Id.* The trial court again imposed a sentence of death. *Id.* at 1128.

On appeal, this Court determined that Rodgers "clearly showed the capacity to appreciate the proceedings and the nature of possible penalties; he showed that he understood the adversarial nature of the legal process; he manifested appropriate courtroom behavior; and he was able to testify in a relevant manner." *Id.* at 1132-33. Accordingly, this Court affirmed Rodgers' sentence of death. *Id.* at 1135.

### Postconviction

After this Court affirmed his sentence of death following resentencing, Rodgers waived the right to postconviction proceedings and counsel. *Rodgers III*, 2012 WL 5381782, at *1. Following a *Durocher*[4] hearing, the trial court "found Rodgers competent and issued an order discharging counsel and dismissing the proceedings." *Rodgers III*, 2012 WL 5381782, at *1.

---

4. *Durocher v. Singletary*, 623 So. 2d 482 (Fla. 1993).

- 6 -

Rodgers' discharged counsel appealed to this Court, challenging the trial court's competency finding. *Id.* at *1-2. Reviewing the record, which contained evidence of severe mental illness, this Court denied counsel's claim, stating that Rodgers had previously been found "competent to: (1) plead guilty to the crime for which [Rodgers] was convicted and sentenced to death, and (2) waive [the] right to a penalty phase jury during [the] second penalty phase, and this Court affirmed on direct appeal." *Id.* Also, the Court noted that "two mental health experts examined Rodgers in preparation for the *Durocher* hearing, and both determined that Rodgers was competent." *Id.* at 2.

## This Case

Rodgers now asserts that, for most of his life, he has suffered from undiagnosed and untreated gender dysphoria, which undermines the trial court's and this Court's former findings of competency in determining that his waivers were valid. However, Rodgers does not raise his condition of gender dysphoria as a claim of newly discovered evidence or ineffective assistance of counsel. *See* per curiam op. at 2.

From the age of 14, Rodgers spent most of his life incarcerated with mental illness. In fact, Rodgers and his codefendant, Lawrence, who Rodgers testified "appealed to [his] angry side," *Rodgers II*, 3 So. 3d at 1130, met in a mental hospital in Chattahoochee, Florida. *Rodgers I*, 934 So. 2d at 1209.

While in State custody, at the age of 14 and again at the age of 18, Rodgers attempted self-castration. Amici Curiae Br. of Am. Civil Liberties Union Foundation & Am. Civil Liberties Union of Fla. (ACLU Br.) at 5. Shortly before waiving the right to postconviction proceedings and counsel, Rodgers wrote letters to defense counsel stating that Rodgers' gender identity disorder was the driving force behind Rodgers' desire to die, stating that "gender dysphoria and the trauma and excruciating pain of [Rodgers'] life ha[d] caused [Rodgers] to lose [the] will to live and to choose death over life." *Id.* at 8. In other words, Rodgers waived both the right to a penalty phase jury and the right to postconviction while struggling with the effects of his untreated gender dysphoria. *Id.* at 6-7.

According to the record, untreated gender dysphoria can cause severe harm and lead to suicidality and debilitating depression. ACLU Br. at 4; *see* Appellant's Initial Br. at 10. In fact, when Rodgers pleaded guilty, Dr. Fredderic J. Sautter, Ph.D. (a psychologist), opined in his report that Rodgers' plea may have been influenced by his mental illness and "wish to die." Appellant's Second Resp. to State's Mot. Suppl. R. & Withdrawal Req. for Protective Order at 12, *Rodgers v. State*, No. SC01-185 (Fla. July 12, 2004). Likewise, the ACLU suggests that Rodgers may have waived the penalty phase in an effort to commit suicide by execution to escape the pain of the untreated condition. ACLU Br. at 2.

Therefore, Rodgers' reported suicidality, self-mutilations, and severe depression are consistent with the severe symptoms of untreated gender dysphoria.

**CONCLUSION**

While it appears that untreated gender dysphoria has been a factor in Rodgers' mental health issues, this Court has already considered and affirmed Rodgers' waivers of a penalty phase jury, as well as postconviction proceedings and counsel, with a record indicating severe mental illness. Thus, the recent specific diagnosis of gender dysphoria, not raised as a newly discovered evidence claim, does not invalidate Rodgers' waivers. Therefore, I agree with the majority that Rodgers is not entitled to have his waivers set aside.

An Appeal from the Circuit Court in and for Santa Rosa County,
John F. Simon, Jr., Judge - Case No. 571998CF000274XXAXMX

Billy H. Nolas, Chief, Capital Habeas Unit, Office of the Federal Public Defender, Northern District of Florida, Tallahassee, Florida,

for Appellant

Pamela Jo Bondi, Attorney General, and Charmaine M. Millsaps, Senior Assistant Attorney General, Tallahassee, Florida,

for Appellee

Nancy G. Abudu, Daniel B. Tilley, and Jacqueline Nicole Azis of ACLU Foundation of Florida, Inc., Miami, Florida,

Amicus Curiae American Civil Liberties Union Foundation of Florida, Inc.