# Supreme Court of Florida

———————

No. SC2023-1662

———————

**SCOTTIE D. ALLEN,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

———————

No. SC2024-0543

———————

**SCOTTIE D. ALLEN,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

July 3, 2025

PER CURIAM.

Scottie D. Allen, a prisoner under sentence of death, appeals the circuit court's order summarily denying his initial motion for postconviction relief filed under Florida Rule of Criminal Procedure

3.851, as well as the circuit court's order denying his request for public records under Florida Rule of Criminal Procedure 3.852. Allen also petitions this Court for a writ of habeas corpus. We have jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the denial of postconviction relief and of Allen's request for additional public records, and we deny Allen's habeas petition.

## I. BACKGROUND

On October 2, 2017, Allen murdered his cellmate, Ryan Mason, at Wakulla Correctional Institution. Soon after being indicted, Allen "began asserting his right to self-representation." *Allen v. State*, 322 So. 3d 589, 592 (Fla. 2021). The trial court found that Allen was competent to proceed and to waive counsel, and "ruled that Allen could represent himself pro se, without standby counsel." *Id.* The trial court did so after independently reviewing the findings of Dr. Jennifer Meyer (a psychologist), and after conducting inquiries required by *Faretta v. California*, 422 U.S. 806 (1975). Allen represented himself in both the guilt and penalty phases.

## A. Guilt and penalty phases

Allen's guilt phase took place on February 19-20, 2019. This Court summarized the guilt phase evidence as follows:

> The evidence presented at trial established that while serving a twenty-five-year prison sentence for second-degree murder, Allen strangled Mason to death in the cell they shared at Wakulla Correctional Institution. Allen confessed to planning and carrying out Mason's murder, including to an investigator from the Florida Department of Law Enforcement (FDLE) during a recorded interview, which was played for the jury, without objection from Allen. As the trial court cogently explained in its sentencing order, the evidence showed that:
>
> > [Allen] planned the murder for weeks after learning Mason had lied to him about the nature of the criminal offense that landed Mason in prison. Upon learning that Mason was convicted of child molestation, [Allen] decided he would kill him. [Allen] raped Mason periodically over the following two weeks to make Mason's life miserable. During this time, [Allen] was paying careful attention to the timing of the inmate head counts throughout each day. On October 1, 2017, [Allen] decided the following morning would be the day he killed Mr. Mason.
> >
> > On the morning of October 2, 2017, in-between head counts, [Allen] raised and draped a sheet over the cell bars to keep anyone from being able to see into the cell. [Allen] then committed the murder and immediately made himself a cup of coffee, sat down, ate half of a honey bun and finished the cup of coffee.

- 3 -

Allen then calmly reported to a correctional officer that he had murdered his cellmate, which resulted in the discovery of Mason's body.

During his recorded statement to the FDLE agent, Allen said that Mason was "kicking like crazy" and that, during the strangling, when Mason was still conscious, Allen told Mason, "I'm going to strangle the life out of you. . . . Tell the devil I said hello."

The medical examiner testified that Mason was choked with such force as to fracture his C6 vertebrae and that after three to five minutes of constant pressure, Mason suffered irreversible brain damage and died. He further testified that the shirt found around Mason's neck was wrapped and knotted so tightly it was difficult to cut through with a surgical scalpel, and that in addition to the injuries indicating that Mason's cause of death was ligature strangulation, Mason had injuries to his wrist, forearm, and ankle, as well as unusual bruising behind his left knee.

*Allen*, 322 So. 3d at 592-93 (alterations in original). On February 20, 2019, the jury convicted Allen of first-degree premeditated murder. *Id.* at 593 & n.1.

The penalty phase trial took place later the same day. There, Allen declined to present any mitigation or argument to the jury. *Id.* at 593. Among other things,

Allen's jury unanimously found that the State had established beyond a reasonable doubt the existence of the following four aggravating factors: (1) Allen was previously convicted of a felony and under sentence of imprisonment; (2) Allen was previously convicted of a felony involving the use or threat of violence to another person; (3) the first-degree murder was especially

heinous, atrocious, or cruel (HAC); and (4) the first-degree murder was committed in a cold, calculated, and premeditated manner, without any pretense of moral or legal justification (CCP).

*Id.* And the jury unanimously recommended death. *Id.*

## B. PSI; amicus counsel; *Spencer*[1] hearing

Following the penalty phase trial, "[t]he trial court ordered a presentence investigation report (PSI) pursuant to Florida Rule of Criminal Procedure 3.710(b)." *Allen*, 322 So. 3d at 593; *see also Muhammad v. State*, 782 So. 2d 343, 361-65 (Fla. 2001) (adopting "policy" of requiring certain mitigation-investigation procedures to be followed in cases in which the defendant waives mitigation), *holding modified by Marquardt v. State*, 156 So. 3d 464 (Fla. 2015). The trial court also appointed amicus counsel to develop and present mitigation at the *Spencer* hearing. *Allen*, 322 So. 3d at 593. But at Allen's insistence, the trial court ordered that neither the Department of Corrections (DOC) nor amicus counsel were to contact Allen's family. According to Allen, his family was unaware of his situation, his mother was "very sick," and Allen did not want

---

1. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

to "push her over the edge."

Given the no-contact limitation demanded by Allen, the PSI, dated March 25, 2019, is not overly thorough. The PSI largely recites the probable cause affidavit and sets forth statements Allen made to the PSI author, including that Allen's "physical and mental health were good," and that Allen "had no prior issues with substance abuse or alcohol."

On March 29, 2019, amicus counsel moved to continue the scheduled *Spencer* hearing for "30-60 days." The trial court granted the request and continued the hearing to June 7, 2019. For his part, Allen sent a letter to the judge "strongly object[ing] to th[e] *Spencer* continuation."

On April 2, 2019, amicus counsel moved to incur costs for a mitigation specialist (Monica Jordan) and a mental health expert (Dr. Martin Falb). The trial court granted the requests.

On April 15, 2019, amicus counsel filed a notice informing the court that the Justice Administrative Commission (JAC) "ha[d] basically run out of money to pay the people" and that additional funds would not be appropriated until July 1. But amicus counsel also informed the court that amicus counsel was "not reliant on

JAC funding 'to keep the lights on.'" And amicus counsel did not request any additional continuance.

On June 6, 2019—the day before the *Spencer* hearing began—amicus counsel filed a notice outlining the potential mitigation. Namely, amicus counsel "anticipated" that the evidence and testimony would "contemplate" two "statutory mitigators"—i.e., (1) "The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance"; and (2) "The capacity of the defendant to appreciate the criminality of his or her conduct or to conform his or her conduct to the requirements of law was substantially impaired," *see* § 921.141(7)(b), (f), Fla. Stat. (2018)—and 70 "non-statutory mitigators."

The *Spencer* hearing began on June 7, 2019. Allen declined the offer of counsel and stated that he reviewed and had no objection to the information that amicus counsel intended to present. Amicus counsel presented the testimony of Ms. Jordan, the mitigation specialist, who testified regarding various aspects of Allen's background. Amicus counsel also presented the testimony of Dr. Falb, a forensic psychologist, who among other things testified about the trauma Allen suffered from different types of

abuse, and who "opined that it was likely Allen suffered from post-traumatic stress disorder (PTSD)." *Allen*, 322 So. 3d at 594. After Dr. Falb testified, Allen clarified for the record that DOC "diagnosed [him] as having major depression and anxiety," but that "those two mental illnesses" did not affect his "ability to go through the[] proceedings pro se." The State then sought "to have Allen evaluated by its own mental health expert, Dr. Greg Prichard, for purposes of rebutting the testimony of Dr. Falb." *Id.* "[T]he trial court ultimately ordered Allen to submit to [the] evaluation," and Allen went on to "cooperate[] with Dr. Prichard's evaluation." *Id.*

The *Spencer* hearing resumed on June 21, 2019. The trial court renewed the offer of counsel, which Allen again declined. The State then called Dr. Prichard, a licensed psychologist, who among other things "disagreed with Dr. Falb's PTSD diagnosis." *Id.*

At the end of the *Spencer* hearing, Allen stated he "would like to take a shot at doing the sentencing memorandum" but inquired whether counsel might be available to assist if Allen "r[a]n into difficulty." Following the court's explanation of sentencing memoranda, Allen thrice declined counsel and stated that he did not "see [himself]" either "having a problem" or "needing counsel."

The judge offered to consider the issue again if Allen put the request in writing. Allen did not submit any written request.

## C. Sentencing

After the submission of sentencing memoranda—Allen's memorandum "adopted amicus counsel's mitigation presentation," *id.* at 602—the trial court followed the jury's recommendation and sentenced Allen to death, *id.* at 595. Among other things, the court found and assigned great weight to each of the four aggravators found by the jury. *Id.* The trial court also

> found one statutory mitigating circumstance to which it assigned moderate weight, namely that Allen's ability to conform his conduct to the requirements of the law is substantially impaired "by adverse childhood experiences that have rendered him less than effective at making good decisions." In addition, the trial court found the following five nonstatutory mitigating circumstances and assigned them the noted weight: (1) the defendant has been diagnosed with alcohol abuse and drug dependency (some weight); (2) the defendant was diagnosed with major depression (moderate weight); (3) the defendant was raised in a dysfunctional family setting (great weight); (4) the defendant was courteous, respectful, and considerate to the court during every court appearance (some weight); and (5) the defendant did not want his family contacted for mitigation purposes (some weight).

*Id.* at 596.

## D. Direct appeal

On direct appeal, this Court affirmed Allen's conviction and death sentence. *Id.* at 592. This Court rejected four unpreserved challenges to Allen's sentence, concluding that although certain errors did occur, they were cured or did not amount to fundamental error. *See id.* at 596-603. This Court's decision became final on January 24, 2022, when the United States Supreme Court denied certiorari review. *Allen v. Florida*, 142 S. Ct. 904 (2022).

## E. Allen's records request

On May 2, 2022, Allen filed a demand for additional public records from DOC. Among other things, Allen requested: (a) classification files for nine current or former inmates; and (b) "[r]eports or data recorded in the Security Threat Group Operational Review Management System relating to the Bloods and Latin Kings during the time period of 2003-2017." DOC objected on the grounds that those requests were overly broad and irrelevant to any colorable claim of relief. Allen responded that the information "would be relevant to a mitigation claim," namely his "repeated victimization by members of a security threat group," and "his experiences in the custody of [DOC]."

At a hearing on November 21, 2022, the judge concluded that the document requests were "way too attenuating." The court later entered a written order denying the requests.

## F. Allen's initial 3.851 motion

On January 21, 2023, Allen filed his 3.851 motion, raising fourteen claims, including one of cumulative error. Allen, who had—as we have explained—waived mitigation and later demanded the no-contact order regarding his family, focused several of his claims on alleged deficiencies in the PSI and in amicus counsel's ability to investigate mitigation, and on the trial court's alleged failure to call its own witnesses at the *Spencer* hearing. Three of Allen's claims focused on his competence to represent himself. And one claim alleged that the prosecutor misstated the law during voir dire.[2]

---

2. Allen's claims were: (1) Allen was denied his constitutional right to an individualized sentencing when the trial court ordered that his family not be contacted regarding potential mitigation evidence; (2) Allen was denied his constitutional right to an individualized sentencing when JAC ran out of funding for criminal conflict cases; (3) Allen was denied his constitutional right to an individualized sentencing when the trial court failed to continue the *Spencer* hearing; (4) Allen was denied his constitutional right to an individualized sentencing when the trial court failed to call its own mitigation witnesses at the *Spencer* hearing; (5) Allen was denied

The circuit court held a *Huff*[3] hearing and later entered an order summarily denying Allen's 3.851 motion. The court concluded that because Allen's claims were "purely legal" and "should have been raised on direct appeal," they were "precluded from th[e] court's consideration by collateral review."

This appeal followed.

_____

his constitutional right to an individualized sentencing when the trial court failed to ensure that a comprehensive PSI was completed; (6) the State violated Allen's due process rights by presenting a State-authored PSI that the State knew, or should have known, was inaccurate; (7) Allen's due process right not to be sentenced based on materially inaccurate information was violated; (8) Allen was denied his constitutional right to an individualized sentencing when the trial court failed to consider all mitigating circumstances submitted by special counsel; (9) Allen's due process rights were violated when the trial court allowed him to continue to represent himself after he equivocated; (10) Allen's right to due process was violated when the trial court found him competent to proceed with self-representation in spite of ample evidence that he suffers from PTSD, which made him incompetent to present a proper defense; (11) Allen's right to due process was violated when he was permitted to represent himself in spite of record evidence that he was seeking to be sentenced to death; (12) Allen's waiver of counsel was not voluntary, as he was operating under the undue influence of another; (13) Allen's right to due process was violated when the prosecutor misstated the law during jury selection thereby creating a structural error in Allen's trial; and (14) cumulative procedural and substantive errors deprived Allen of a fundamentally fair trial.

3. *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

## II. POSTCONVICTION APPEAL

Allen raises twelve issues on appeal of the summary denial of his rule 3.851 motion. Our standard of review of the summary denial of a rule 3.851 motion is de novo. *Kocaker v. State*, 311 So. 3d 814, 821 (Fla. 2020).

Although "[a]n evidentiary hearing must be held on an initial 3.851 motion whenever the movant makes a facially sufficient claim that requires factual determination," *id.* (quoting *Barnes v. State*, 124 So. 3d 904, 911 (Fla. 2013)), an evidentiary hearing is not required if the claims are all "legally insufficient, procedurally barred, or refuted by the record," *Morris v. State*, 317 So. 3d 1054, 1071 (Fla. 2021) (quoting *Matthews v. State*, 288 So. 3d 1050, 1060 (Fla. 2019)). For example, if a claim could have been brought on direct appeal, it is "procedurally barred in postconviction," *Doty v. State*, 403 So. 3d 209, 214 (Fla. 2025) (quoting *Barnes*, 124 So. 3d at 912), and thus does not warrant an evidentiary hearing.

Nor is an evidentiary hearing warranted when a pro se capital defendant brings a claim that effectively challenges the quality of his defense. That is because a defendant who chooses self-representation after knowingly, intelligently, and voluntarily waiving

counsel "cannot later complain that the quality of his defense was substandard or amounted to ineffective assistance of counsel." *Id.* at 215 (quoting *McKenzie v. State*, 153 So. 3d 867, 878-79 (Fla. 2014)).

Here, the circuit court correctly concluded that Allen's 3.851 claims should have been raised on direct appeal and thus warranted summary denial. Allen's attempts to avoid the procedural bar are unavailing. Even putting aside the procedural bar, Allen's 3.851 claims fail, as do his attempts to sidestep the consequences of his waiver of counsel. Accordingly, we affirm the summary denial of Allen's 3.851 motion. We also affirm the denial of Allen's request for additional records, given that Allen cannot relate that request to any colorable claim for postconviction relief.

## A. Seven claims regarding sentencing

In his first seven 3.851 claims, Allen argues that certain failures by the trial court and actions by the State deprived him of the individualized sentencing required by *Lockett v. Ohio*, 438 U.S. 586 (1978), or otherwise violated his due process rights. These claims all "could have been litigated at trial and upon direct appeal," *Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983), and are

- 14 -

thus "procedurally barred in postconviction," *Barnes*, 124 So. 3d at 912. Moreover, the claims are without merit.

**1.**

First, Allen takes issue with the trial court agreeing to *his* demand that his family not be contacted regarding mitigation. Relying on *Muhammad*, Allen claims that the no-contact order "created a state impediment" to the investigation and presentation of mitigation. We affirm the summary denial of this claim.

Putting aside that this Court has recently questioned *Muhammad* and the notion of "forc[ing] a mitigation presentation upon an unwilling, competent defendant," *Allen*, 322 So. 3d at 602 n.5, and putting aside the seeming absurdity of allowing a defendant to waive mitigation and then later claim that the State inadequately developed mitigation, this claim is barred. This claim is also meritless. *Cf. Mora v. State*, 814 So. 2d 322, 331-33 (Fla. 2002) (concluding that, under the circumstances, trial court erred by failing to respect defendant's wishes that penalty phase counsel be precluded from contacting defendant's elderly family members for purposes of developing mitigation). In any event, any error in issuing the no-contact order was invited by Allen and thus waived.

- 15 -

*See Baptiste v. State*, 324 So. 3d 453, 456 (Fla. 2021) ("[I]nvited error preclude[s] fundamental error review.").

## 2.

Second, Allen claims the lapse in JAC funding impeded the hiring of necessary experts with whom he "would have met." This claim is procedurally barred and refuted by the record. Nothing in the record indicates that the lapse in JAC funding prevented amicus counsel from retaining necessary experts. Moreover, the record does reflect that, aside from agreeing to "cooperate" with Dr. Falb, Allen was—in amicus counsel's words—otherwise "unwilling to be the subject of actual interviews and diagnostic testing."

## 3.

Third, Allen takes issue with the trial court's purported failure to "continue the *Spencer* hearing until sometime after July 1, 2019." According to Allen—who had "strongly object[ed]" to the trial court granting the one continuance requested by amicus counsel—"[t]he tight timeframe and lack of JAC funds [beginning in April 2019] forced special counsel and Ms. Jordan to forego necessary investigation into mitigation." As part of this claim, Allen suggests that, at the *Spencer* hearing, he "equivocat[ed] regarding the

appointment of counsel." We disagree.

This claim is barred and not cognizable. At bottom, what Allen really claims is that amicus counsel was ineffective for failing to request an additional continuance. But Allen cannot claim ineffective assistance of amicus counsel. *See Grim v. State*, 971 So. 2d 85, 102 (Fla. 2007) ("[A] defendant has no basis for claiming that special counsel's presentation of mitigation evidence was ineffective." (citing *Muhammad*, 782 So. 2d at 364 n.15)). In any event, Allen presents no case law to support the proposition that a trial court errs in failing to sua sponte grant a continuance that amicus counsel does not request—let alone where amicus counsel was granted a previously requested continuance.

As to Allen's purported "equivocat[ion]," this assertion—which relates to one of his habeas claims—is refuted by the record. As noted earlier, the cited conversation took place at the conclusion of the *Spencer* hearing, and, after the trial court's explanation of sentencing memoranda, Allen repeatedly and unequivocally denied requesting counsel.

**4.**

Fourth, again relying on *Muhammad*, Allen claims the trial

court failed to call its own witnesses. This claim is procedurally barred and otherwise fails. In describing the procedures established in *Muhammad* and modified in *Marquardt,* this Court has said that if the trial court is alerted "to the probability of significant mitigation, the trial court has the discretion either to call its own witnesses or . . . appoint an independent, special counsel, who can call witnesses to present mitigation evidence." *Woodbury v. State,* 320 So. 3d 631, 651-52 (Fla. 2021) (omission in original) (quoting *Marquardt,* 156 So. 3d at 491). Here, the trial court appointed amicus counsel, who called witnesses to present mitigation evidence. The trial court thus hardly ran afoul of the *Muhammad* and *Marquardt* procedures.

**5.**

Fifth, Allen claims the trial court failed to ensure that a comprehensive PSI was completed. Allen asserts that the PSI "must be 'comprehensive' and 'meaningful,' and the State must tender any relevant records in its possession." (Quoting *Muhammad,* 782 So. 2d at 363.) Allen asserts that "DOC had other background information," including Allen's mental health records, his victimization by other inmates, and information regarding an

- 18 -

inmate (Steven Williams) who claimed to have Allen and another inmate "under his control and directed them to commit murders of child molesters."

This claim is procedurally barred and otherwise fails. As an initial matter, the bar for "comprehensive" is not quite as exacting as Allen suggests. *Cf. Bell v. State*, 336 So. 3d 211, 215 n.7 (Fla. 2022) ("Though the PSI was not particularly thorough, it included the type of information a comprehensive PSI requires."). In any event, Allen concedes that the alleged PSI deficiencies are "in part due to the trial court's order preventing family contact"—something Allen demanded. In that respect, any error was invited and waived. Allen further waived any error by failing to object to the PSI after acknowledging that he reviewed it. *Cf. McKenzie v. State*, 153 So. 3d 867, 883-84 (Fla. 2014) (affirming summary denial of postconviction claim alleging PSI deficiencies; reasoning that claim was "waived" where, among other things, defendant responded in the negative when asked "if anything was missing from the report"). Lastly, Allen ignores that amicus counsel presented mitigation. *See Jones v. State*, 212 So. 3d 321, 342 (Fla. 2017) (plurality opinion) (rejecting claim that PSI failed to comport with *Muhammad*,

- 19 -

concluding that "[t]he procedures followed by the trial court"—including "appoint[ing] court counsel for the purpose of presenting mitigation at the *Spencer* hearing"—"were sufficient to ensure that mitigation was presented").

**6.**

Sixth, Allen asserts that his due process rights were violated by the State presenting a PSI that the State knew or should have known was inaccurate. In his reply brief, Allen clarifies that this claim is asserted under *Giglio v. United States*, 405 U.S. 150 (1972). According to Allen, the State "failed to put relevant evidence in mitigation," namely his "victimization by other inmates, a relationship of sorts with Steven Williams who claims to have directed this murder, and mental health issues." Allen asserts that, contrary to DOC's records, "the PSI incorrectly listed [his] physical and mental health status as 'good,' . . . and states that [he] has 'no prior issues with substance abuse or alcohol.' "

To the extent this is a repackaged claim that the PSI was deficient, this claim fails for reasons already discussed. To the extent Allen advances a *Giglio* claim, the claim is barred. This Court has said that "a *Giglio* claim 'based on information that the

- 20 -

defendant and defense counsel had at the time of trial' is barred." *Jimenez v. State*, 265 So. 3d 462, 479 (Fla. 2018) (quoting *Moore v. State*, 132 So. 3d 718, 724 (Fla. 2013)). Allen's claim is based on information that—even if true—was obviously available to Allen. In any event, the trial court did not rely on Allen's statements to the PSI author. On the contrary, after amicus counsel's presentation, the trial court found, for example, that Allen "has a history of drug and alcohol abuse."

## 7.

Allen's seventh claim is that the "false and misleading PSI violated [his] due process right to be sentenced based on accurate information." (Emphasis omitted.) He again points to the no-contact order, certain PSI omissions, and the PSI's recitation of Allen's own statements.

In addition to being duplicative of the two prior claims and procedurally barred, this claim was waived due to Allen's request for the no-contact order, his own statements to the PSI author, and his failure to object to the PSI. This claim is also built on the false premise that Allen was "sentenced based on inaccurate information." Again, the trial court did not rely on Allen's

- 21 -

statements to the PSI author.

## B. Competency to waive counsel

Allen argues that his right to due process was violated when the trial court found him competent to proceed with self-representation despite "ample evidence" that he suffers from PTSD. He asserts that under *Indiana v. Edwards*, 554 U.S. 164 (2008), he should not have been allowed to represent himself. He contends that, based on Dr. Meyer's report and Dr. Falb's testimony, the judge should have ordered another competency hearing rather than finding "sua sponte" in the sentencing order that Allen's PTSD was not a severe mental illness for purposes of *Edwards*.

Allen's claim could have been raised on direct appeal and is thus procedurally barred. Moreover, Allen misreads *Edwards*. And the record defeats Allen's claim.

This Court has said that "*Edwards* did not grant any substantive rights to defendants." *Hernandez-Alberto v. State*, 126 So. 3d 193, 210 (Fla. 2013). Rather, *Edwards* held "that the Constitution does not forbid a State" from "insisting" that a criminal defendant "proceed to trial with counsel" when the defendant is "found" by the "state court" to be "mentally competent to stand trial

if represented by counsel but not mentally competent to conduct that trial himself." 554 U.S. at 167. Here, the "state court" found Allen to be mentally competent to conduct the trial himself.

This Court has also said that a defendant's "behavior in court" can "defeat[] a[] claim that he was not competent to conduct the proceedings on his own." *Woodbury*, 320 So. 3d at 647. As the State persuasively argues (with ample record cites), Allen's behavior in court shows that he was mentally competent to conduct the trial and thus plainly defeats his claim.

### C. Allen's desire to be on death row

Allen's next claim is an iteration of his *Edwards* claim. He asserts that his right to due process was violated when he was permitted to represent himself despite record evidence that he was seeking to be sentenced to death. He asserts that his desire to move to death row—which was no secret—was "an escape from stressors" and rendered the trial not "adversarial." Dr. Meyer concluded that Allen's intention to end up on death row "d[id] not appear influenced by symptoms of mental illness, intellectual disability, or any other psychiatric condition." According to Dr. Meyer, Allen informed her that he thought death row would be

"more favorable than a long incarceration while housed in general population." Allen said similar things to Dr. Prichard, including that Allen did not have a death wish and "hope[d]" to "get 10 or 15 years on death row."

Allen's claim could have been raised on direct appeal and thus warranted summary denial. The claim is also without merit. Indeed, this claim fails for the same reasons as his previous claim. That is, "*Edwards* did not grant any substantive rights to defendants," *Hernandez-Alberto*, 126 So. 3d at 210, and Allen's "behavior in court" defeats his claim that he was not competent to conduct the proceedings on his own, *Woodbury*, 320 So. 3d at 647.

As part of this claim, Allen asserts that additional evidence regarding his prior second-degree murder conviction—a murder for which Allen was imprisoned when the offense in this case occurred—would have actually been "mitigation" showing he "acted with chivalry in taking the blame" for someone else. As "chivalrous" as Allen may or may not have been, "the postconviction context" is not an opportunity for a pro se defendant to present "evidence that might have been considered by the jury or the trial court as mitigation." *McKenzie*, 153 So. 3d at 884.

## D. Voluntariness of Allen's waiver of counsel

Allen argues that because he was purportedly operating under the undue influence of inmate Williams, Allen's waiver of counsel was not voluntary. According to Allen, during a June 2018 interview with FDLE agents, Williams explained that he "exercises control" over Allen and another inmate, that Williams concocted a plan whereby he, Allen, and the other inmate would murder child molesters, and that Williams "wanted them to go to death row together." Allen does not allege that Williams ever told Allen to waive counsel.

Allen's claim could have been raised at trial and on direct appeal and thus warranted summary denial. And we reject Allen's suggestion that any claim that references "facts that are extrinsic to the record"—in this case, the Williams interview—cannot be procedurally barred. In any event, Allen's claim is also refuted by the record. Allen affirmatively represented at the *Faretta* inquiries that no one pressured him to waive counsel and that his decision was "absolutely voluntary."

## E. Prosecutor's statements during jury selection

Allen argues that, during jury selection, the prosecutor

committed "structural error" by using a skydiving analogy that, in Allen's words, "explain[ed] that if the aggravating circumstances outweighed the mitigating circumstances, the jury needed to vote for death." We disagree.

The prosecutor presented the prospective jurors with a "skydiving example" to which the prosecutor likened the process of the jury's decision "when it comes to the death penalty on whether to impose it." Analogizing the process to "getting up, getting ready, and jumping out of an airplane," the prosecutor explained that "[s]ome people will tell you right up front, I'm not getting on a plane to jump off of it." Those people, according to the prosecutor, "couldn't impose the death penalty under any circumstances" and thus should not be seated on the jury. The prosecutor also described as problematic those individuals who would get on the airplane (i.e., on the jury) only to later say, "I didn't think I was going to get on this jury, and I can't jump out of this airplane. I'm not getting out of this seat." In the end, the prosecutor explained the need to have jurors who can stand at the door of the airplane and "make[] a decision" that, after examining "all conditions," it is either "appropriate" or "not appropriate" to jump (i.e., to

recommend a death sentence). Allen did not object to the skydiving analogy. Instead, Allen acknowledged the analogy and offered the prospective jurors his own analogy, "liken[ing] [the process] to more a soldier going to war."

At bottom, this claim challenging the prosecutor's skydiving analogy is an impermissible attempt to challenge the quality of Allen's self-representation. *See Doty*, 403 So. 3d at 215. In any event, this claim is refuted by the record. The prosecutor did *not* tell the potential jurors that if the aggravators outweighed the mitigators, they needed to vote for death. Rather, as just outlined, the prosecutor offered the skydiving analogy while explaining the context of looking for jurors who could get to the door of the airplane and be able to decide that a death sentence is "either appropriate or not appropriate," as opposed to jurors who could never "get on the plane" or could never get out of the seat after getting on the plane. In other words, the prosecutor sought to identify individuals who would be unable to recommend a sentence of death under any circumstance. Doing so was not improper. *Cf. Johnson v. State*, 969 So. 2d 938, 948 (Fla. 2007) ("Persistent equivocation or vacillation by a potential juror on whether he or she

can set aside biases or misgivings concerning the death penalty in a capital penalty phase supplies the reasonable doubt as to the juror's impartiality which justifies dismissal.").

### F.  Cumulative error

Allen's final 3.851 claim is one of cumulative error.  This Court has said that "where the individual [3.851] claims of error alleged are either procedurally barred or without merit, the claim of cumulative error also necessarily fails."  *Truehill v. State*, 358 So. 3d 1167, 1187 (Fla. 2022) (quoting *Parker v. State*, 904 So. 2d 370, 380 (Fla. 2005)).  Allen's claims are all procedurally barred and without merit.  Accordingly, Allen is not entitled to relief.

### G.  Request for public records

Allen takes issue with the circuit court's denial of his request for certain additional public records under rule 3.852(g).  Allen acknowledges that he bears the burden of showing that the records related to a "colorable claim" for postconviction relief.  And he argues that the records would have established "a mitigation claim"

regarding his frame of mind and his ongoing difficulties in prison.[4]

A circuit court's denial of a records request under rule 3.852(g) is reviewed for abuse of discretion. *See Dennis v. State*, 109 So. 3d 680, 698 (Fla. 2012). Here, the circuit court did not abuse its discretion in denying Allen's request. Even assuming Allen's request was not overly broad or unduly burdensome, the type of "mitigation claim" that Allen sought to establish was one that he should have presented to the jury or trial court. Such a claim warrants no relief in postconviction. *See McKenzie*, 153 So. 3d at 884 ("Based upon [defendant's] knowing, intelligent, and voluntary waiver of his right to counsel, and due to either inadvertence, lack of legal experience, or a definitive decision, evidence that might have been considered by the jury or the trial court as mitigation was not presented. The fact that [defendant] may have made ill-advised decisions while he represented himself does not establish that he is entitled to a 'do-over' of his penalty phase or any phase of his underlying trial in the postconviction context.").

---

4. Allen references "*Brady* material" but fails to adequately brief any claim under *Brady v. Maryland*, 373 U.S. 83 (1963).

## III.  HABEAS CLAIMS

In his petition for writ of habeas corpus, Allen raises six claims of ineffective assistance of appellate counsel.  Each claim fails.

The standard for assessing a claim of ineffective assistance of appellate counsel "parallels" the standard in *Strickland v. Washington*, 466 U.S. 668 (1984), for assessing a claim of ineffective assistance of trial counsel.  *Truehill*, 358 So. 3d at 1187 (citing *Wilson v. Wainwright*, 474 So. 2d 1162, 1163 (Fla. 1985)).  "Thus, to succeed on such a claim, the petitioner must establish that appellate counsel's performance was deficient and that the deficient performance resulted in prejudice."  *Id.* (citing *Rutherford v. Moore*, 774 So. 2d 637, 643 (Fla. 2000)).

We have recognized that "appellate counsel cannot be deemed deficient for failing to raise meritless issues or issues that were not properly raised in the trial court and are not fundamental error."  *Conahan v. State*, 118 So. 3d 718, 733 (Fla. 2013) (citing *Valle v. Moore*, 837 So. 2d 905, 907-08 (Fla. 2002)).  Here, Allen's claims all involve meritless issues or unpreserved issues that are not "meritorious claims of fundamental error."  *Jackson v. State*, 347 So. 3d 292, 308 (Fla. 2022) (citing *Sheppard v. State*, 338 So. 3d

- 30 -

803, 830 (Fla. 2022)). Appellate counsel thus cannot be deemed deficient for failing to raise these issues.

## A. Sentencing order

Allen asserts that appellate counsel should have raised the claim that the trial judge failed to "expressly evaluate" all 70 nonstatutory mitigating factors listed in the Notice Related to Mitigation filed by amicus counsel prior to the *Spencer* hearing. Allen focuses on the following items: extreme poverty; living with an abuser; potential mental disorders; willingness to take responsibility; intelligence; kindness; not being a lawyer; and not understanding the postconviction process.

This Court has said that "the sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature." *Campbell v. State*, 571 So. 2d 415, 419 (Fla. 1990) (footnote omitted), *receded from in part by Trease v. State*, 768 So. 2d 1050, 1055 (Fla. 2000). Here, even assuming *Campbell* applies to this case, Allen's claim fails.

As an initial matter, Allen misstates this Court's precedents.

- 31 -

He asserts that the failure to expressly evaluate each proposed mitigator "constitutes fundamental error" that warrants "a new appeal, or . . . a new penalty phase." But this Court has found that a significant enough *Campbell* error—where that error was raised on direct appeal—warranted a remand "for the limited purpose of . . . providing this Court with a revised sentencing order." *Oyola v. State*, 99 So. 3d 431, 447 (Fla. 2012), *receded from in part by Rogers v. State*, 285 So. 3d 872, 890 (Fla. 2019). Here, of course, no *Campbell* error was asserted on direct appeal.

Moreover, this Court has said that a trial court may comply with *Campbell* "by bundling proposed mitigating circumstances into categories of related conduct or issues" and can "avoid repeatedly addressing proposed mitigating circumstances that are redundant." *Smiley v. State*, 295 So. 3d 156, 176-77 (Fla. 2020). Some items Allen takes issue with fall within the "categories of related conduct or issues" set forth in the sentencing order. For example, "poverty" and "liv[ing] with his abuser" reasonably fall under the sentencing order's category that Allen "was raised in a dysfunctional family setting." As to the remaining items, any error falls far short of fundamental error. Indeed, had this issue been raised on direct

appeal, any *Campbell* deficiency would have been deemed harmless. *See id.* at 177 (concluding that *Campbell* error was harmless where there was "no reasonable possibility that [defendant] would have received a lesser sentence absent the trial court's error"). The judge acknowledged "review[ing]" the "Notice Related to Mitigation." Additionally, Allen's case involves four weighty aggravators. And the nonstatutory mitigation Allen references—to the extent it is mitigating—would hardly warrant considerable weight in comparison. In short, appellate counsel was not ineffective in failing to raise this claim.

### B. Allen's purported equivocation

In an iteration of one of his 3.851 claims, Allen argues that appellate counsel was ineffective in failing to raise the unpreserved claim that due process was violated when the trial court allowed Allen to represent himself despite his purported equivocation at the conclusion of the *Spencer* hearing. We deny this claim.

As an initial matter, this claim is inadequately briefed. Allen relies on *Faretta* and *Hardwick v. State*, 521 So. 2d 1071 (Fla. 1988), for the proposition that a defendant's request for self-representation must be unequivocal. But the relevant issue should

- 33 -

instead be whether Allen, who long ago unequivocally waived counsel, later equivocated in requesting the reappointment of counsel and, if so, then what.  Allen offers no briefing on that issue.

In any event, as explained above, Allen's claim is refuted by the record.  Ultimately, Allen insisted on proceeding without counsel.  No error occurred, let alone fundamental error.  Appellate counsel cannot be deemed deficient for failing to raise this unpreserved and meritless claim.

## C.  CCP

Allen argues that appellate counsel was ineffective in failing to raise the unpreserved claim that the CCP aggravator was not proven.  The CCP aggravator requires proof that

> the killing was the product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold); that the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated); that the defendant exhibited heightened premeditation (premeditated); and that the defendant had no pretense of moral or legal justification.

*Joseph v. State*, 336 So. 3d 218, 239 (Fla. 2022) (quoting *Franklin v. State*, 965 So. 2d 79, 98 (Fla. 2007)).  Allen takes issue with the "no pretense of moral or legal justification" element.  He claims he presented unrebutted evidence of a pretense—namely that "the

- 34 -

victim was a . . . child molester"—and that the sentencing order does not address that element.  We deny this claim.

Putting aside that Allen's sentencing memorandum conceded the CCP aggravator, Allen unsurprisingly offers no case law to support his "pretense" argument.  This Court has defined a pretense of justification as "any colorable claim based at least partly on uncontroverted and believable factual evidence or testimony that, but for its incompleteness, would constitute an excuse, justification, or defense as to the homicide," *Jackson v. State*, 25 So. 3d 518, 534 (Fla. 2009) (quoting *Salazar v. State*, 991 So. 2d 364, 376-77 (Fla. 2008)), or as "any claim of justification or excuse that, though insufficient to reduce the degree of homicide, nevertheless rebuts the otherwise cold and calculating nature of the homicide," *Banda v. State*, 536 So. 2d 221, 225 (Fla. 1988).  In this case, Allen's belief that the victim was a child molester hardly falls within that definition.

Here, the trial court "sufficiently detailed the facts supporting the CCP aggravator." *Carter v. State*, 980 So. 2d 473, 483 n.5 (Fla. 2008).  The sentencing order—in the analysis of CCP—states that "[u]pon learning that [the victim] was convicted of child molestation,

[Allen] decided he would kill him" and began raping him "to make [his] life miserable." Those record-based facts plainly support the conclusion that there was no pretense of justification. Appellate counsel cannot be deemed deficient for failing to raise this unpreserved and meritless issue.

### D. Prosecutor's skydiving analogy

Allen claims that appellate counsel was ineffective in failing to raise the "fundamental" and "structural" error that the prosecutor misstated the law during jury selection when using the skydiving analogy. As explained above, the prosecutor did not misstate the law. Appellate counsel cannot be deemed deficient for failing to raise this unpreserved and meritless issue.

### E. Nonstatutory aggravation

Allen argues that appellate counsel was ineffective in failing to raise the unpreserved claim that the jury and judge (in the sentencing order's discussion of CCP) considered nonstatutory aggravation—namely, Allen "saying he wanted to rape the deceased victim"—that "was introduced by the State and then argued as a feature of the penalty phase closing arguments." Allen's claim—which is not a challenge to the finding of CCP—is that his intent to

sodomize the victim arose "spur-of-the-moment" after the murder and was thus irrelevant to "showing a premeditated plan" for purposes of CCP. Allen does not appear to dispute that his intent to sodomize the victim would be relevant if it arose prior to the murder. We deny Allen's claim.

As an initial matter, Allen cites no case law that supports his assertion that nonstatutory aggravation amounts to "fundamental error"—as opposed to "harmful" or "not harmless" error. In any event, there was no error, and certainly no fundamental error. Rather than being nonstatutory aggravation, the challenged statements went directly to CCP.

As part of the prosecutor's argument for CCP (not any one element), the prosecutor at one point discussed Allen's stated intent to sodomize the victim one final time as "part of this cold, calculated, premeditated plan"—i.e., "one more further humiliation and despicable act he had planned for the victim." That comment permissibly suggested "reasonable inferences that the jury may draw from the evidence," *Calhoun v. State*, 312 So. 3d 826, 853 (Fla. 2019) (citing *Fleurimond v. State*, 10 So. 3d 1140, 1148 (Fla. 3d DCA 2009)), including from Allen's letter to the State Attorney and

Allen's recorded interview, portions of which can be construed to mean that Allen's intent to do awful things to the victim's body arose prior to the murder. It was also not impermissible for the prosecutor to discuss how Allen was "calm" and "cold" before and after the murder, including how Allen laughingly told the FDLE agent in a recorded interview that the smell of the victim's soiled body prevented Allen from having sex with the body and that Allen said to the victim, "You won that one."

Allen fails to explain how the alleged error meets the basic test for fundamental error—that is, how "the jury's recommendation [and the sentence] of death could not have been obtained without the assistance of the alleged error." *Colley v. State*, 310 So. 3d 2, 17 (Fla. 2020) (citing *Smiley*, 295 So. 3d 156). Appellate counsel was not deficient in failing to raise this unpreserved claim.

### F. Comments by prosecutor

Allen argues that appellate counsel was ineffective in failing to raise the unpreserved claim that three "improper comments and arguments" by the prosecutor cumulatively amounted to fundamental error. We already addressed two of the three items— the prosecutor's skydiving analogy and the purported "nonstatutory

aggravation"—and explained why no error occurred.

The third item involves the HAC aggravator. Allen claims the prosecutor "committed a golden rule violation in his penalty phase closing . . . by inviting the jury to place themselves in the victim's position as he was strangled." Allen takes issue with the prosecutor telling the jurors that the HAC aggravator "causes you to look at and consider, as jurors, what the victim went through." Allen also takes issue with the prosecutor using the pronoun "you" when introducing a two-minute pause of silence—a pause conducted so the jurors could appreciate how long Allen choked the victim. The prosecutor said: "We're going to see how long 30 seconds is when somebody's hand's around your throat or a ligature is around your throat, you can't breathe." We deny this claim.

This Court has said that an improper "golden rule" argument "invite[s] the jurors to place themselves in the victim's position during the crime and imagine the victim's suffering." *Braddy v. State*, 111 So. 3d 810, 842 (Fla. 2012) (quoting *Mosley v. State*, 46 So. 3d 510, 520 (Fla. 2009)). Here, as an initial matter, the prosecutor's use of the words "consider . . . what the victim went through" was not a golden rule violation or an erroneous

description of HAC. *Cf. Ritchie v. State*, 344 So. 3d 369, 381 (Fla. 2022) (using the word "consider" in rejecting defendant's claim that prosecutor made golden rule argument when arguing in support of HAC aggravator; concluding that prosecutor "appropriately focused on asking the jury to *consider . . . what the victim experienced* while [defendant] was compressing her neck" (emphasis added)).

As to the prosecutor's use of the pronoun "you," this Court has said that a prosecutor's "repeated use of the pronoun 'you' " "when referring to [the victim] during closing argument" is something that "*suggests*" a golden rule argument. *Braddy*, 111 So. 3d at 842-43 (emphasis added). The prosecutor in *Braddy* "often used" that pronoun—without objection—when referring to the victim during closing argument, *id.* at 842, and this Court concluded that the comments only "arguably . . . crossed the line," *id.* at 843. In any event, this Court concluded that "in light of the totality of evidence presented at [defendant's] penalty phase trial," the comments "d[id] not constitute fundamental error." *Id.* at 843.

Here, unlike in *Braddy*, the prosecutor only passingly used "you" and "your." But even if the prosecutor arguably overstepped, Allen falls far short of establishing fundamental error—individual or

cumulative—"in light of the totality of evidence presented at [Allen's] penalty phase trial." *Id.*; *see also Ritchie*, 344 So. 3d at 381, 385-86 (finding improper golden rule argument where prosecutor went beyond "simply us[ing] pronouns like 'you' and 'your,' " but concluding that "the combined prejudice" from that error, from a second improper golden rule argument, and from certain other errors in prosecutor's closing argument did not amount to fundamental error in light of the "substantially aggravated and minimally mitigated case"). In short, appellate counsel was not deficient in failing to raise this unpreserved claim.

## IV. CONCLUSION

For the reasons stated above, we affirm the summary denial of Allen's initial rule 3.851 motion for postconviction relief, affirm the denial of Allen's request for additional public records, and deny Allen's habeas petition.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Wakulla County,
      Ronald Wallace Flury, Judge
      Case No. 652018CF000203CFAXMX
And an Original Proceeding – Habeas Corpus

Dawn B. Macready, Capital Collateral Regional Counsel, Elizabeth
Spiaggi, Assistant Capital Collateral Regional Counsel, and Nida
Imtiaz, Assistant Capital Collateral Regional Counsel, Northern
Region, Tallahassee, Florida,

      for Appellant/Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, and
Jonathan S. Tannen, Assistant Attorney General, Tampa, Florida,

      for Appellee/Respondent